JUDGE ROBERTSON
delivered the opinion oe the court.
For several years previous and subsequent to tbe year 1860, A. W. Macklin and W. T. Ferguson were partners in the culture of cotton on a plantation called “Boggy Bayou,” in Chicot County, Arkansas; Macklin residing in Franklin County, Kentucky, and Ferguson on the partnership land, acting as the superintending manager of the planting concern. In February of that year Ferguson bought live mules and a black horse for eight hundred and ten dollars, and also one black mule for one hundred and seventy-five dollars, avowing that he bought for the use of the plantation, executing his individual note, signed “W. T. Ferguson.” The facts conduce to show that the stock so bought was used in the service of the partnership.
In February, 1866, both Ferguson and Macklin having in the mean time died, this action was brought against Macldin’s executor on both notes. The petition alleged that the consideration of the notes was work-stock for the firm; that it was employed for the benefit of the firm; and that the firm name was “W. T. Ferguson.” The answer traversed all these allegations; and, on a comprehensive issue, the juiy found against the executor on both notes, and the court, overruling a motion for a new trial, confirmed the verdict by its judgment.
The testimony might have authorized the deduction that the stock for which the notes were given was bought for and applied to the use of the partnership; and on that hypothesis Macklin was bound by the purchase. But there was no pretense for the controverted allegation that “"W. T. Ferguson” was the style of the firm; on the contrary, the proof is conclusive that it was “Macklin & Fei’guson,” so understood and so used in all partnership transactions, and that Ferguson signed his own name only *403 in his own independent transactions. It also appears that he sometimes bought and sold mules on his own account and for his own exclusive benefit. Nor is there any evidence that Macklin ever authorized Ferguson to bind him otherwise than in the firm name, or ratified the notes in this case as his, or as such obligatory on him.
Then, assuming that Ferguson bought the stock for the firm and applied it to that use, and conceding that, according to reason and authority, Macklin was bound by the oral contract, still the decisive question remains, Is he bound also by the notes to which he was no party,-and which do not purport to bind him or his firm? If Ferguson’s notes as an individual were accepted as a merger of the partnership liability, Macklin was thereby exonerated; and if not so accepted, and Macklin was still liable for the consideration, how'and why is he liable in this action on the notes which do not purport any obligation on the firm of “Macklin & Ferguson?” Had the notes, as signed, purported to have been for and by a firm, an error in the style of the firm would not have exonerated Macklin on proof that, even though not named, he was one of the firm intended, because that proof disclosed him as a member of the firm intended, and thereby made him a pai’ty. This principle was recognized by this court in the case of Kinsman v. Dallam, 5 Mon.-385. Or had Macklin been a dormant partner and Ferguson been the only overt partner, doing their business in the name of “W. T. Ferguson,” proof that Macklin was a secret co-partner would have made him a party to the note. This also was adjudged by this court in the manuscript opinion in the case of Hickman v. McGee.
Hut here there was neither dormancy nor any other partnership name than the well-known and accustomed name of “Macklin & Ferguson.” The reason of these *404 adjudged cases therefore does not apply to this case, but implies that the notes as signed were not by any firm, nor in any way binding on Macklin as written obligations. The case of Hykes v. Crawford & Long, 4 Bush, 19, is the only case in this court that squints the other way. In that case, Crawford and Long being liable as partners, Long gave his individual note with Hykes as surety for the debt; and Hykes, having satisfied the judgment against Long and himself on that note, was adjudged to be entitled to restitution from Crawford as well as Long. But in reasoning on the subject, although it may have been immaterial to Crawford’s liability for contribution whether he was bound by the note or only for the original debt which the surety paid, yet the court, instead of saying that he was originally bound by the consideration, said that he was bound by the note given for it by his partner. It does not appear that Long’s signature did not import the partnership firm. Had it appeared otherwise, the suggestion alluded to would have been an obitur inadvertence, which could not be recognized as autnority. as it seems to us, such recognition would confound causes of action and disturb the harmony of scientific jurisprudence.
But Smith, in the third edition of his Commercial Law by Holcomb and Gholson, page 81, cites and approves the case of Kirk v. Blinton, 9 M. & W. 284, in which it was'in effect adjudged in England that to bind a partner by a note drawn by another partner in his own name, it must appear that such was the style of the firm. And this appears to us to be the true doctrine, uncontrolled by any other accredited or consistent and well-considered authority.
The result is that unless Ferguson’s notes discharged Macklin, an action might have been maintained against him or his executor on his parol liability, implied by his *405 partner’s purchase for tbe use of the firm, but that this action on the notes must fail because he was not bound by the notes as such. The circuit court misinstructed the jury to the contrary.
Wherefore the judgment is reversed, and the cause remanded for a new trial.