CHIEF JUSTICE HARDIN
delivered the opinion oe the court.
In this suit in equity the plaintiff, F. M. Smith, sought mainly to recover against the estate of A. C. Turner the balance of a debt of $846.85, evidenced by the following “due-bill” or note executed by Talton Turner, and delivered to Smith through his agent, J. P. Tribble:
“Due to Frank M. Smith eight hundred and forty-six dollars and eighty-five cents, this March 5, 1868.
Talton Turner.”
It appears that on the 13th of October, 1866, A. C. Turner, who was the father of said Talton, and a farmer owning a considerable estate, entered into a contract of copartnership with his son, to continue for three years, for the purposes of farming and trading in stock, the agreement stipulating that “A. C. Turner is to let Talton Turner have his farm and all the stock thereon; the said Alfred Turner is to have half the profits of the stock in trading; the said Alfred Turner is to furnish the money for the trading purposes; and the said Talton Turner is to pay half the per cent on half the money furnished the firm; and he is also to furnish no clothing for the family. The said Talton Turner is to return the farm with as much corn, oats, wheat, and stock as he receives at this time. He is to return the farm at the end of three years *419 to the said A. C. Turner. The firm is to furnish groceries for the family.”
Thus aided by the means and credit of A. C. Turner and his recognition as his partner, Taitón Turner traded extensively in cattle, generally buying the stock in Madison County, where he and his father were known, and selling in the markets of Cincinnati and other distant cities. And although it was claimed in this suit by A. C. Turner that the partnership was virtually dissolved, perhaps as early as March, 1868, Taitón Turner having married and ceased to reside in the family of his father, there is no evidence of the cancellation of the partnership agreement, nor any sufficient evidence of public or private notice of its dissolution having been given for the information of persons trading with Taitón Turner.
The debt in controversy was created for cattle purchased of Smith shortly before the date of the note, and taken by Taitón Turner to Cincinnati, and there sold, Smith taking no note at the time, but expecting payment on Turner’s return. Being disappointed in this, he sent his brother-in-law Tribble to ' see Turner, and have him to close the transaction by writing, and thereupon the note for $846.85 was executed.
While the evidence conduces to the belief that the partnership as a fact was generally known in the community, and that Smith was uninformed of its dissolution, and that upon it the credit of Taitón Turner was mainly based, there is no certain or direct evidence from which to determine the essential question in this case whether the cattle were in fact sold to the firm or to Taitón Turner alone upon the faith of his individual credit and responsibility. It is not shown that Taitón Turner had any uniform habit of signing obligations intended to bind the firm, and there is much evidence in the case tending to show that A. C. Turner recognized the existence of a liability upon him for the debt. It not only appears that he repeatedly promised to pay the whole debt, but he did pay nearly half of *420 it, partly with his own and partly with the means of the firm; and there is some evidence conducing to the conclusion that he got and appropriated to his own use part of the proceeds of Smith’s cattle.
Under these circumstances we must ’conclude that the sale of the cattle was made to and upon the faith of the firm, and not .merely to Taitón Turner individually. But, as was in effect decided by this court in the case of Macklin’s ex’r v. Crutcher (6 Bush, 401), if the note for $846.85 was accepted as the sole and individual obligation of Taitón Turner, and as merging all existing liability of the firm, then, as the court below adjudged, A. C. Turner was no longer under any legal responsibility for the debt, whatever his liability may at first have been. But it is equally true and consonant with authority that if, notwithstanding the form of the note, it was given and accepted not merely as the individual promissory note of Taitón Turner, but was meant and intended as an obligation for and on behalf of the firm for the price of the cattle, then its acceptance did not exonerate A. C. Turner. (Gow on Partnership, p. 56.) And we have been led by the facts and circumstances disclosed in the record to adopt this latter construction of the transaction. It seems to us therefore that the court erred in dismissing the petition as to A. C. Turner’s representatives.
Wherefore the judgment is reversed, and the cause remanded for a judgment conformable to this opinion.