CASE 52—PETITION EQUITY—FEBRUARY 13.

# National Exchange Bank of Lexington v. Wilgus' Ex'ors.

APPEAL FROM FAYETTE CIRCUIT COURT.

WHERE THE NAMES OF TWO OF THREE PARTNERS WERE, BY THE REQUEST OF THE THIRD PARTNER, SIGNED TO A NOTE for money borrowed to be used, and which was used, for partnership purposes, the names signed must be regarded as the firm name for that particular transaction, and the firm is bound on the note just as if the usual firm name had been signed. And renewals signed in the same way also bind the firm. And while such a renewal, after the death of the third partner, did not bind him, yet as there was no intention to release him from the payment of the original note, and it was canceled through inadvertence, he remained bound thereon.

WM. LINDSAY for appellant.

While a note signed by another than the firm name does not *prima facie* bind the firm, yet where the partners authorize or direct a note to be signed by some other than the regular firm name, given for money or property received for and used by the firm, that note binds the firm and every member of it. (Macklin v. Crutcher, 6 Bush, 403; Carter v. Mitchell, 94 Ky.)

J. H. BEAUCHAMP on same side.

1. This case comes directly within the rule established in Hikes v. Crawford, &c., 4 Bush, 19, and Smith v. Turner's Adm'r, 9 Bush, 417, and in the recent case of Carter v. Mitchell, Assignee, 94 Ky., in which the two first-named cases are reviewed with the case of Macklin v. Crutcher, 6 Bush, 402.

2. Even if a renewal should destroy the obligatory power of the note, the bank is entititled to a recovery upon the principle settled in Turnbow v. Broach, 12 Bush, 456.

R. A. THORNTON for appellees.

1. While parol evidence is admissible to charge a dormant or silent partner, whose name is undisclosed by the contract, it is not admissible to charge an ostensible partner, known by the payee of the note to be such, upon a note made by a copartner in his individual name, and accepted by the payee as the individual note of the maker, as was the case with the notes in question in the case at bar. (Macklin's Ex'or v. Crutcher, 6 Bush, 404; 1 Randolph on Commercial Paper, sec. 147; Bedford Commercial Ins. Co. v. Corell, 8 Met. (Mass.), 442; Daniel on Negotiable Inst., vol. 1, sec. 303, third ed.; 1 Lindley on Partnership, p. 340; Holmes v. Burton, 9 Vt., 252 ; s. c., 31 Am. Dec., 621, Shiffkin v. Walker, 3 Camp., 308; Murray v. Somerville, 2 Camp., 99, note; Kirk v. Burton, 9 M. & W., 284; Scott & Thatcher v. Colmesnil, 7 J. J. Mar., 416.)

    Cases commented on : Hikes v. Crawford & Long, 4 Bush, 19; Carter v. Mitchell, Assignee, 94 Ky.; Smith v. Turner's Adm'r, 9 Bush, 417.

2. The mere use, by a firm, of money advanced upon the individual security of one partner does not render the firm liable. (Macklin's Ex'or v. Crutcher, 6 Bush, 404; Holmes v. Burton, 9 Vt., 252; Emily v. Lye, 15 East, 11; Bevan v. Lewis, 1 Sim., 376; Clay v. Cantrill, 18 Pa. St., 413; North Penn. Coal Co.'s Appeal, 45 Pa. St., 181.)

L. W. ROBERTSON on same side.

Where a partner borrows money in his own name and gives his individual note for it, the other partners are not bound on the note, although it was made for the benefit of the firm, and the firm received the use of

the money.   In order to bind a partner on a note, it must be executed by himself or in the firm name.   (Story on Partnership, 134, 135, 136; North Penn. Coal Co.'s Appeal, 84 Am. Dec., 487; Holmes v. Burton, 31 Am. Dec., 621 ; 2 Lawson's Rights and Remedies, secs. 645, 676; Macklin v. Crutcher, 6 Bush, 401; Montague v. Reakert, 6 Bush, 393; Galliott v. Planters, &c., Bank, 36 Am. Dec., 256; 1 Lindley on Partnership, star page 189, chap. 1, sec. 6.

CHIEF JUSTICE BENNETT DELIVERED THE OPINION OF THE COURT.

J. B. Wilgus and W. E. and E. K. Cropper composed a firm of patrners engaged in the tobacco business in the city of Lexington, Ky., under the firm name of Cropper & Co.   During the existence of the firm, W. E. and E. K. Cropper signed their names to six promissory notes to the appellant for money loaned for the use of the firm, and which was used by the firm in its business.   J. B. Wilgus having died, and the firm having become insolvent, and the notes not having been paid, the appellant presented the notes to the estate of J. B. Wilgus for payment.   The representatives of said estate refused payment of the notes upon the ground that, as they were signed by W. E. and E. K. Cropper in their individual names, and not in the firm name of Cropper & Co., J. B. Wilgus, a member of the firm, was not bound for the payment of the notes, nor upon an implied assumpsit for the money so loaned.

It appears, without contradiction, that J. B. Wilgus at the time of the loans was a director in the appellant; that he told the appellant that his firm needed the loan of some money, and requested the appellant to let the firm have it.   But, inasmuch as he was one of the directors of the appellant, he did not wish his name to appear on the paper, and for that reason to let the paper appear in the names W. E. and E. K. Cropper; that the money was loaned to the firm for its use, and the notes taken under

said arrangement. Also that the money was used by the firm with the knowledge and consent of Wilgus; and that he afterward recognized the firm's liability for the payment of the notes.

The question is, when a note is signed by one partner in his individual name, which is not the firm's usual name, for borrowed money to be used for the benefit of the firm, and at the request and consent of the other partner, is the partnership bound on the note for its payment? As this court has settled that question to its own satisfaction, it is needless to go outside to look for precedent.

In the case of Carter v. Mitchell, 94 Ky., 261, the cases by this court upon the question at issue are reviewed and a rule established which governs this case.

It is held in that case that the doctrine announced in the case of Hikes v. Crawford & Long, 4 Bush, 19, to the effect that when a note had been executed for borrowed money by one member of the firm in his own name, and which was not the firm's name, and the money was used for the benefit of the firm, the firm was liable on the note for its payment, was no longer the law in this State. It was also held in that case that when a note was executed by one member of a firm in his individual name, which was not the firm's name, for the benefit of the firm, by the consent of the other member, such consent made the note the firm's note, and it was bound for its payment. It seems in such case that the consent of the member not signing that the other member may sign the note for the benefit of the firm, is equivalent to making that member's name the firm's name for that particular transaction, and the case of Macklin's Ex'or v. Crutcher, 6 Bush, 401, is construed to be in harmony with this view. It is clear that

the money was loaned by the appellant to W. E. and E. K. Cropper, in their individual names, and not in the firm's name, but for its benefit, at the request of J. B. Wilgus, and the firm did get the benefit of it.

These facts certainly made the notes firm notes and bound Wilgus for their payment. But it is said that Wilgus refused to sign the notes, which shows that he did not intend to be bound thereon, and that the bank so understood it. But we think the facts relative to that matter are in favor of his liability on the notes, because he asked the bank to loan the money to W. E. and E. K. Cropper for the benefit of the firm, and gave as his reason for not getting the money in the name of Cropper & Co., that, being a director in the bank he did not wish to appear as obligor on the notes. This fact, we think, emphasizes the conclusion reached that Wilgus authorized the use of the names W. E. and E. K. Cropper as representing the firm's name. Also, the fact that the firm's tobacco was pledged to secure the payment of the notes with the knowledge and consent of Wilgus, is another fact showing that he intended said names to represent that of the firm. Some of said notes were renewed in the lifetime of Wilgus, in the name of the same payors. This fact does not militate in favor of Wilgus, because as the names of the Croppers were intended to represent the name of the firm in the matter of borrowing money from the bank, the renewals of the notes were only evidences of the same transaction, and bound Wilgus for their payment. Conceding that the Croppers had no right to renew one of the notes after the death of Wilgus, the bank did not release Wilgus from the payment of the original note which he was bound on unless the bank had intended to

release him; but the bank says, and proves it, that it never intended to release Wilgus from the payment of the original note, and that the cancellation of the same was an inadvertence. According to this, he remained bound on the same until the renewal was paid or satisfied.

The judgment is reversed and the case is remanded, with directions to give appellant judgment on the notes sued on, except the one executed after the death of Wilgus, and to render judgment in that case on the original note against Wilgus' representatives.