## MILLER v. MILLER.
### No. 5049.

Court of Civil Appeals of Texas. Amarillo.
June 26, 1939.

Will Crow, of Canadian, for appellant.

W. D. Fisher, of Canadian, for appellee.

JACKSON, Chief Justice.

The appellant, Mrs. John Miller, who is seventy-seven years old, instituted this suit in the District Court of Hemphill County against her husband, John Miller, who is eighty-six years old, to obtain a divorce and a decree partitioning between them their community property.

She alleged that she and the appellee were married in February, 1893 and lived together as husband and wife until September 13, 1936, on which date on account of his continuous nagging, quarreling, abusive and cruel conduct he had wrecked her health and nervous system and their longer living together became insupportable and she was forced to leave him.

She alleges that during their marriage they acquired and still own the following real estate, which she says is community property:

"All of Survey No. 2, Abstract No. 588, Certificate No. 150, D. & S. E. RR. Co., Original Grantee, and containing 320 acres of land." (This we hereafter designate as property number one.)

"Lots Nos. 19, 20, 21, and 22, in Block No. 29, of the Original Town of Canadian, Hemphill County, Texas." (This we hereafter designate as property No. 2.)

"Lots Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 11 and 12, in Block No. 2, of Connell & McAdams Addition to the Original Town of Canadian, Hemphill County, Texas." (This we hereafter designate as property No. 3.)

"Lots Nos. 1, 2 and 3, in Block No. 12 of the South Side Addition to the Original Town of Canadian, Hemphill County, Texas." (This we hereafter designate as property No. 4.)

The appellee answered by general demurrer, general denial and pleaded that the property involved and described in appellant's petition was acquired with funds and the proceeds from the sale of property owned by him before he and appellant married and was his separate property.

By way of cross-action he sought a divorce from appellant because of her alleged extravagance, cruel treatment and excesses that rendered their living together insupportable.

In a supplemental petition appellant urged a general demurrer, numerous special exceptions to appellee's answer and cross-action, and pleaded a general denial.

Any additional statement of the pleading which we deem necessary to the disposition of this appeal will be made later.

In response to special issues submitted the jury found, in effect, that the conduct of the appellee toward his wife was not such as to render their living together insupportable, but that the conduct of appellant toward her husband did render their living together insupportable; that all the moneys used in the purchase of the properties hereinabove designated as "property No. 1", "property No. 2", "property No. 3" and "property No. 4" was money which had been earned or the proceeds from the sale of property which had been owned by appellee prior to his marriage with the appellant and that no part of the consideration paid for any of said properties was money or property earned by appellant and appellee after their marriage.

On these findings the court granted the appellee a divorce on his cross-action, decreed all the property to be his separate property, and adjudged a life estate in the appellant to the lots and the improvements thereon designated above as "property No. 3", and that upon her death such property should revert to the appellee, his heirs and assigns and that the appellee recover all of "properties No. 1, No. 2 and No. 4."

The appellant assails as error the action of the court in overruling her general demurrer to appellee's cross-action for a divorce because nowhere in such cross-action did he allege that children were born or that no children were born to them and

therefore the trial court was without jurisdiction to render a decree in favor of appellee.

Article 4639a, Vernon's Ann.Civ.St., provides in substance that each petition for divorce shall set out the name, age, sex and residence of each child under sixteen years of age born of the marriage sought to be dissolved, if any were born, and, if none were born, then the petition shall so state and no court having jurisdiction shall hear or determine such suit for divorce unless the petition or cross-action therefor contains an allegation with such information.

There was no allegation in the cross-action furnishng the court with this informaton, however, the appellant in her petition for divorce did allege "that there were no children born of said marriage", meaning the marriage of herself and appellee. She sought a divorce; the court submitted to the jury a fact issue to ascertain if she was entitled to a decree therefor and such issue was determined against her. The allegation in appellant's petition remedied the insufficiency of the pleading of appellee and this assignment is overruled. Aucutt v. Aucutt et al., 122 Tex. 518, 62 S.W.2d 77, 89 A.L.R. 1198, and Scott et al. v. Scott, Tex.Sup., 123 S.W.2d 306.

■ Appellant, by an assignment, complains of the general allegations in a certain named paragraph in the answer in which it is stated that appellee owned property prior to his marriage to appellant of the value of $8,000 which he sold and with the proceeds purchased the property appellant asserts to belong to the community. The defect in this paragraph is cured by specific allegations in other paragraphs of the answer stating in detail the property owned prior to the marriage, the price for which it was sold and the disposition made of the proceeds.

■ The appellant also, by several assignments, complains of the action of the court in overruling her separate so-called special exceptions leveled at certain paragraphs of appellee's answer and cross-action relative to the nature, character and acquisition of the properties involved in this controversy.

To illustrate the contentions presented by such assignments and as typical of each, we here copy part of paragraph 3 of appellee's answer and state the exceptions urged thereto by appellant.

"That from time to time, he sold his said properties above mentioned, and invested a part of it in the properties now owned by him described in plaintiff's petition. * * * That Bud Ross of Gray County owed him a note for $665.00 for personal property sold him, and he collected this note by taking a team of mules and horses and he sold these and used money and he purchased lots Numbers 19, 20, 21 and 22, in Block No. 29, in Canadian. That the mules and horses received on note was his property that he had had before marriage, and that he sold them after he married, and the said Ross gave him his note for same and paid him by delivering team of mules & horses, and shortly before the purchase of the said lots and when he collected same, he took the money from said sum being $150.00 and paid for these lots, securing the deed dated June 11th, 1902, from W. Joe Smith and his wife, Etta Smith, recorded in Vol. 7 at page 408 to 410, Deed Records of Hemphill County, which consideration paid for same was from the sale of his own separate property, owned by him prior to his said marriage."

The appellant separates her exception to this paragraph into subdivisions and after quoting a portion of the allegations, excepts thereto because such allegations are immaterial, a conclusion of the pleader; states no ground in law or equity upon which appellee is authorized to claim the property as his separate property; alleges no fact that would constitute the property his separate property or that would admit proof of the facts necessary to determine that it was his separate property. The allegations are neither artistic nor perspicuous but we believe are sufficient.

■ The appellee pleaded a general denial under which, in our opinion, he would have been authorized to have introduced evidence to show that he acquired the property before his marriage, the consideration he received for it and that he invested the proceeds in the property in dispute since such testimony would tend to disprove the community character of the property. Good v. Chiles, Tex.Com.App., 57 S.W.2d 1100; Hayes v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 254 S.W. 501.

■■ The appellant urges as error the action of the court in refusing to instruct the jury to find that the property involved was the community property of appellant and appellee. The record discloses that appellant and appellee were married in Febru-

ary, 1893 and that the properties under consideration were acquired after their marriage.

Article 4619, R.C.S.1925, says: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only. All the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

The appellee depends alone on his undisputed testimony to show that the property involved was paid for with his separate funds. At the date of the trial he was eighty-six years old, his hearing so defective that he manifestly failed to hear many of the questions propounded to him, and his counsel in eliciting the source of the funds used in paying for the property, over the objection of appellant, led the witness constantly, the court agreeing that it was necessary on account of the condition of the witness.

"Property No. 1", the school section, consisting of 320 acres, was sold to appellee January 20, 1898 at $1 per acre; proof of occupancy was made December 6, 1901, and patent issued therefor in the name of appellee on January 8, 1920. He testified that in 1883 the New York Life Insurance Company issued to him a policy of paid up life insurance to mature in fifteen years; that he paid the premiums thereon annually until 1898, at which time he collected $1500 thereon, which was the cash value of the insurance, and out of the proceeds of this policy he paid the initial payment of one-fortieth of the purchase price on "property No. 1" and bought cattle and began ranching. It will be noted that the jury found that no part of the consideration of any of the properties was paid with money or property acquired by appellant and appellee after their marriage and this finding is not challenged except in the motion for directed verdict and no error is assigned on such finding and no accounting sought.

In White v. Hebberd et al., Tex.Civ.App., 89 S.W.2d 482, 485, the court says: "The status of property as separate or community is fixed by the facts of acquisition at time thereof. Janes v. Gulf Production Company (Tex.Civ.App.) 15 S.W.2d 1102; Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911,

17 L.R.A.,N.S., 154, 130 Am.St.Rep. 869; Welder v. Lambert, 91 Tex. 510, 44 S.W. 281; Stiles v. Hawkins (Tex.Com.App.) 207 S.W. 89. And the fact that part of the consideration is paid out of the community estate or the separate estate of the other spouse, or that improvements are placed thereon by such estates, does not alter that status. Such payments, while they may constitute an equity or a charge for which the party contributing may be entitled to reimbursement in an action of equitable partition, create no title or interest in the land as such. Dakan v. Dakan [125 Tex. 305] 83 S.W.2d 620, and cases cited."

The appellee testified that on account of his health in 1892 he sold material which he had and used in the operation of his blacksmith shop and received in consideration therefor a note for the sum of $665 executed by Mr. Ross; that the note was renewed from year to year and in 1896 he accepted two mules in part payment of the note and in 1898 he sold the mules for $400 in cash, enclosed it in an envelope and placed it with George Gerlach in the safe of Gerlach Brothers for the purpose of purchasing property when he found what he considered a bargain and that he took $150 out of the $400 he had in the safe and purchased the property designated "property No. 2", four lots in the Original Town of Canadian, the deed to which discloses that it was executed to him June 11, 1902 and that the consideration paid was $115 cash. We think the testimony sufficiently certain to support the finding of the jury and the judgment of the court that "property No. 1" and "property No. 2" became, under the law and this record, the separate property of appellee.

He testified that he purchased "property No. 3", in Block 2, in the Connell & McAdams Addition, and paid therefor out of the balance of the $400 he had placed with George Gerlach in Gerlach Brothers' safe. The deed to this property shows that he acquired it for a cash consideration of $275 on January 25, 1909, eleven years after the money was left in the safe.

He testified that he purchased "property No. 4" but did not know exactly where the money came from but said: "I think it came out of the New York Life Insurance Company." The record discloses that he purchased Lot 1 of "property No. 4" from Clarence Ruggles and his wife on November 6, 1915 for the recited consideration of $200 cash and the assumption of twenty-seven

vendor's lien notes, twenty-six for $15 each and one for the sum of $10; that he acquired Lot No. 2 of "property No. 4" by deed dated July 28, 1917 for a recited consideration of $110, and he acquired Lot No. 3 of said property by deed dated September 13, 1917 for the consideration of $115.

Appellee testified that he collected the money for the mules in 1898 and that he collected the money on the life insurance policy the same year; that he began keeping his money in three banks in his own name in 1906 and thereafter deposited his money in said banks and no one was permitted to draw checks thereon except himself. No writing of any nature was introduced tending to show that appellee got the money out of Gerlach's safe in 1909 to pay for "property No. 3" and none to show that he had any of the money from the life insurance policy in 1915 and 1917, seventeen and nineteen years, respectively, after it was received, when he acquired the property designated "property No. 4." In our opinion, the appellee failed to overcome the presumption that "properties Nos. 3 and 4" were community property.

In Chapman v. Allen, 15 Tex. 278, 284, the Supreme Court said: "The presumption that property purchased during the marriage is community property is very cogent, and can only be repelled by clear and conclusive proof that it was with the individual money or property of one of the partners. Where the property has not been preserved in specie or in kind, but, as in this case, has undergone mutations and changes, it is indispensable, to maintain its separate character, that it be clearly and indisputably traced and identified."

This announcement of the law is followed in Mayor v. Breeding et al., Tex.Civ.App., 24 S.W.2d 542; Davis et al. v. Duncan et al., Tex.Civ.App., 102 S.W.2d 287.

The decree of divorce in behalf of appellee and the judgment of the court decreeing that Section 2, Certificate No. 150, D. & S. E. R. R. Co., Grantee, Hemphill County, and that Lots Nos. 19, 20, 21 and 22 in Block No. 29, of the Original Town of Canadian, Hemphill County, Texas, are the separate property of appellee are affirmed, but the judgment decreeing Lots 1, 2 and 3 in Block 12 of the South Side Addition, and Lots 1, 2, 3, 4, 5, 7, 8, 9, 10, 11 and 12 in Block 2 of the Connell & McAdams Addition, are the separate property of the appellee is reversed and rendered, adjudging the last above described property to be the community property of appellant and appellee. The judgment is affirmed in part, reversed and rendered in part, and the court directed to appoint commissioners to partition said community property between appellant and appellee in kind if susceptible of partition, but if not, that the commissioners be ordered to sell the community property at the best price obtainable and the proceeds thereof divided between the litigants.