## HARKNESS v. McQUEEN et al.

No. 4620.

Court of Civil Appeals of Texas. Beaumont.

May 31, 1950.

Rehearing Denied Sept. 14, 1950.

630

Stewart, Burgess & Morris, Houston, for appellant.

W. J. Knight, Houston, George B. Darden, Conroe, Kenneth Krahl, Julia Mae Anderson, Houston, for appellees.

COE, Chief Justice.

This action was brought by appellant, Ralph C. Harkness, against appellees, Martelia H. McQueen (former wife of ap-

pellant) and her husband, Tolbert F. Mc-Queen, and their grantees, Edgar P. Bean and wife, Blanche M. Bean, in trespass to try title, asking for recovery of title to and possession of an undivided one-half interest in a 5 acre tract of land in Montgomery County, Texas, and in the alternative for recovery from appellee, Martelia Harkness McQueen and husband, Tolbert F. McQueen, a money judgment in the amount of $1,750 as to which appellant seeks to impose a trust on certain land in Freestone County, Texas, alleged to have been purchased with the proceeds from the sale of the Montgomery County property and for the imposition of the trust on the Freestone County property and for the proceeds of other property disposed of by appellee Mrs. McQueen, former wife of appellant, and for partition of said Freestone County property. Appellant also sought to recover from the appellees McQueen interest in certain furniture which he alleged was community property of the appellant and Mrs. McQueen; to recover for his interest in $2,500 fraudulently withheld and concealed by Mrs. McQueen from the sale of a piece of property in Harris County, Texas, referred to in the record as a brick residence; and further to recover for his interest in the proceeds of property sold by the appellee Mrs. McQueen, which was located in Harris County, and referred to in the record as a frame residence, alleging that the appellee Mrs. McQueen had defrauded him of his community interest therein, and for an accounting between appellant and appellee Mrs. McQueen as to their community property and for partition.

The case was tried to a jury and upon the close of all the evidence the court, pursuant to appellees' motion, instructed a verdict for appellees and rendered judgment for appellees. From such judgment this appeal was properly perfected. The appellees, Martelia Harkness McQueen and husband, Tolbert F. McQueen, answered by general denial and plea of not guilty as did the appellees, Edgar P. Bean and wife, Blanche M. Bean.

By appellant's Points numbered from 1 to 22 he complained of the action of the trial court in granting the motion of appellees' for instructed verdict because there was sufficient evidence to support a jury finding that the several tracts of land described in his petition constituted community property of appellant and Mrs. McQueen, and the only evidence to the contrary was the uncorroborated and contradicted testimony of Mrs. McQueen, an interested party, and therefore it was error to enter a judgment against the appellant and in favor of appellees. Similar points are made relative to each count contained in the appellant's petition. Inasmuch as the evidence is necessarily different as it affects the different counts of appellant's petition, we will consider each count separately. We will first consider the action of the trial court in instructing a verdict and in entering judgment against the appellant as to his action in trespass to try title to 5 acres of land, same being the West ½ of Lot No. 43 of the Shadydale Subdivision in the Wm. Willis Survey in Montgomery County, Texas.

It was shown upon the trial of this case that appellant Harkness and the appellee Mrs. McQueen were married in the city of Baltimore some time during the year of 1919, and were divorced by judgment of one of the district courts of Harris County, Texas in 1945, which judgment made no disposition of the community estate, if any, of the parties. On the contrary it recited that the parties owned no community estate. The deed to this 5 acres of land was executed on March 21, 1936, by one James A. Musick, reciting a consideration of $500, $75 of which was paid in cash and the balance was represented by a vendor's lien note of $425, payable in monthly installments of $25 and conveyed said 5 acres of land to Mrs. R. C. Harkness (now Mrs. McQueen). The divorce decree above referred to was entered on the petition of the appellee Mrs. McQueen, then Mrs. Harkness, service on the appellant being by publication. In her petition she alleged that she and the appellant were married on or about the 19th day of March, 1919, and lived together as husband and wife until during the month of January, 1938, at which time the defendant left and

abandoned her without just cause or provocation, and that such abandonment continued for a period of more than 7 years. Further, that there was no community property accumulated during said marriage, either real estate or personal property. To this petition was attached a proper affidavit and request for the issuance of citation for service by publication.

The appellant testified by deposition in which he states that he had been crippled since August, 1944, and can hardly use his legs at all on account of arthritis and cannot walk except with difficulty and on crutches, and is unable to travel and that is the reason he was unable to attend court in this case. At the time the deposition was taken he resided in Tampa, Florida; that before he was crippled he was superintendent and chief engineer for the Atlantic, Gulf and Pacific Dredging Company, 15 Park Row Building, New York; that he married the appellee Mrs. McQueen in Baltimore, Maryland in 1919; that she owned no money or property at the time they were married; that she never told him she owned any money or property; that she did not acquire any money or property after their marriage, except $250, being her share in her deceased father's estate; that his employment in the dredging work carried him from place to place, including Norfolk, Virginia, Newark, New Jersey, New York, Boston, Fall River, Massachusetts, Houston, Brownsville and Corpus Christi, Texas, Tampa, Florida and various other places; that the general office and headquarters for the dredging company was in New York City; that he left Texas in 1929; that he had always lived in the same place with his wife until he left Texas, and had no idea how much money he had given her up to that time; that after leaving Texas he continued to send his wife money regularly until the year of 1942; that he has checks and money orders showing that he had sent her, during that time, the sum of $8,865, besides that he gave her cash money and had sent her money by telegraph which he had no receipt for but could not say how much it amounted to and would not undertake to approximate it; that he first learned that Mrs. Martelia Harkness had filed

suit for divorce against him in May, 1946; that he and his wife never made any kind of an agreement concerning a division of their property; that he received nothing from the sale of the property in Montgomery County, being the West ½ of Lot 43 of the Shadydale Subdivision, of the Wm. Willis Survey, and that he first learned that Mrs. Harkness had sold the property to Edgar P. Bean and wife in May, 1946, and that he did not authorize Mrs. Harkness (now Mrs. McQueen) to sell that property to Edgar P. Bean or any one else; that in addition to the money he had sent to his wife that she received all the money received as rents from other property owned by them which will be referred to later on. The substance of Mrs. McQueen's testimony is to the effect that the consideration for the 5 acres of land in Montgomery County, Texas, was paid from her separate property, that is, from funds which she had won gambling in Hot Springs, Arkansas during 1907 and 1908, and said that she kept these funds in cash in three places, to wit, between some boards, in a robe and in the hem of a skirt; that her husband knew nothing of her having this money which in all amounted to several thousand dollars. She kept $2,000 of this money nailed up between boards which she kept under the ice box and other places; that she had some $1,800 in a robe and $800 or $900 in a skirt; that she was sure she paid no part of the purchase price of the land from money sent her by her husband and that it was all paid out of money from the skirt, boards and robe. This, if true, would establish her separate ownership of this property.

Upon the trial of this case the appellee, Mrs. McQueen, testified that the appellant abandoned her in 1929 and not in 1938 as alleged in her petition for divorce and left her to manage as best she could, stating, in effect, that he never intended to return and that he gave his consent for her to buy the Montgomery County property, but stated that he would assume no responsibility in connection therewith. Other portions of her testimony will be set out in connection with the discussion of the other points.

Appellant calls our attention to many inconsistencies and contradictory statements in the testimony of the appellee Mrs. McQueen, which they contend were such as to discredit her as a witness and were such as to justify a jury in rejecting her testimony and was, therefore, insufficient to overcome, as a matter of law, the prima facie case made out by appellant. These statements are that she testified that at the time she filed her divorce petition against appellant that he resided in Long Island, N. Y., and that he was working for the Atlantic, Gulf and Pacific Dredging Company at that time, and that she had corresponded with him. Yet she admitted that prior to the time she filed her divorce petition that she signed an affidavit that her husband (appellant) was dead. This affidavit was made so as to enable her to sell, without the joinder of her husband, what is referred to as a frame dwelling in Harris County, Texas; that in October, 1945, when she filed her divorce petition she swore that appellant's whereabouts and residence were unknown to her. Again she testified at the trial that she sold the frame house without the joinder of appellant because "he told me it was my own property to do as I pleased and that he would not interfere." While she had testified in her deposition, which was taken previously, that she had not heard from appellant since they sold the brick house (which was prior to the sale of the frame dwelling); that appellant would not have signed the deed to the frame house to Mr. Nagorny and that the only way she could convey the property to Mr. Nagorny without bringing appellant into it was to sign an affidavit that appellant was dead. Accordingly, she executed a deed reciting therein that she was a widow. Further, Mrs. McQueen testified that she had deposited $3,500, proceeds from the sale of the Montgomery County property (sold to appellee Bean) in the bank at Fairfield; that she then bought stock, plow, tools, chickens and calves for the farm and she bought some clothes. While in her deposition she testified that she used these proceeds to pay bills for clothes, lumber and groceries and that she deposited the remainder of the $3,500 in the Union National Bank in Houston. She admitted that she previously stated to Mr. Mintz that she used $1,500 of the proceeds to pay a debt to her brother, and in testifying to other payments she testified that she had made such payments from the hem of her skirt and again from the hem of her robe. Particularly, she testified first that the money paid for the Montgomery County land was paid out of money she had in the robe or her skirt when she had previously testified that it was paid out of the hem of her skirt. She knew because she kept it in a handbag and it was easy to get to. Upon a later examination by her counsel she testified that such payments were made from the money she kept between the boards. There are other similar contradictions. To our minds, her statement to the effect that she had won this money gambling during the years of 1907 and 1908 and had kept it in the places indicated for a period of some 30 years and without the knowledge of her husband is such that reasonable minds might differ as to its accuracy. At least her credibility and the weight to be given her testimony should have been left to the jury. Certainly it does not measure up to the rule announced in Spears' Law of Marital Rights in Texas, 3rd Ed., Sec. 298, as follows: "It will be borne in mind that the presumption of the community character of property acquired by her spouse during marriage is very strong, and can be overcome only by clear and convincing proof that it belongs to one or the other of them, and that the burden of proving its separate character is always upon him who asserts it." This particular property was acquired while the marriage relation still existed between the appellant and the appellee Mrs. McQueen, and is controlled by provisions of art. 4619, Vernon's Sales Civil Statutes, which in part provides, "Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common

effects or gains, unless the contrary be satisfactorily proved." The deed conveying this property to the appellee Mrs. McQueen made no reference to it being her sole and separate use or as constituting her separate estate. Appellees contend that the trial court was justified in instructing a verdict in their favor under the authority of Janes v. Gulf Production Co., Tex.Civ.App., 15 S.W.2d 1102, 1109, emphasizing the language used by Chief Justice Hightower where he stated "because of the language of the deed or of the extraneous proof to the same effect, the presumption of law simply disappears from the case and is no longer a factor in construing the deed nor in weighing the evidence. The presumption of law controls only in the absence of proof. Upon the coming in of any proof it disappears."

It is not believed that the court intended to hold that in all cases where the presumption of community property exists under the statute, any evidence, however slight, or of such a nature that a jury would be justified in rejecting it, justifies a trial court in instructing a verdict against a party claiming such property to belong to the community estate. To so hold would, in effect, nullify that part of the statute which provides that such presumption prevails unless the contrary be satisfactorily proved. It must be borne in mind that the primary question passed upon by the court in the Janes case, supra, was the construction of a deed. The opinion as a whole indicates to our minds that no such holding was intended nor that they were undertaking in any manner to modify the provisions of the statute regarding the quantum of proof necessary to overcome the statutory presumption. As we view the evidence in this case affecting the status of this piece of property, the most that can be said is that it raised an issue for the jury to determine whether this property belonged to the community estate of Mr. and Mrs. Harkness or was the separate property of appellee Mrs. McQueen. Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935; Burroughs v. Smith, Tex.Civ.App., 294 S.W. 948; Osborn v. Osborn, 62 Tex. 495; Gameson v. Gameson, Tex.Civ.App., 162 S.W. 1169; Miller v. Miller, Tex.Civ.App., 131 S.W.2d 245; see also Himes v. Himes, Tex.Civ. App., 55 S.W.2d 181 and Simmonds v. St. Louis, B. & M. R. Co., 127 Tex. 23, 91 S. W.2d 332.

Appellee also contends that the evidence conclusively shows that appellant abandoned his wife in 1929 and left her to manage for herself, and in effect consented for appellee Mrs. McQueen to acquire this property as her separate estate. The evidence is conflicting as to when appellant abandoned his wife, if in fact he ever did. Appellee Mrs. McQueen alleged in her petition for divorce that the appellant abandoned her in 1938. She testified at the trial of this cause that appellant abandoned her in 1929. Appellant says nothing as to when if ever, he abandoned his wife. He testified in effect that his work caused him to move from Texas in 1929, since which time he has worked and resided in many different places, and, as set out above, continued to send his wife money until the year 1942. Be this as it may, this property was acquired during the existence of the marriage relation and was owned by them at the dissolution of their marriage, and was therefore presumptively community property, which presumption could only be overcome by clear and satisfactory evidence. This would be true even though appellant had abandoned his wife in 1929, this fact alone being insufficient to overcome the statutory presumption. See Carter v. Barnes, Tex.Com.App., 25 S.W. 2 606.

The appellees Edgar P. Bean and wife, Blanche M. Bean, contend that even if the evidence should show the property to be community property it was conclusively established that these appellees were bona fide purchasers for value without notice of its being community property when it was purchased from Mrs. McQueen, and and further since the legal title was in Mrs. McQueen the burden rested upon appellant to prove that appellees took title with notice of appellant's community interest in the land and did not acquire their title

in good faith, contending that the evidence was such as to justify the trial court's instructing a verdict in their favor on the theory that they were purchasers in good faith for valuable consideration without notice of any claim of appellant. With this contention we cannot agree. During the negotiations for this piece of property the appellee Mrs. Martelia McQueen made and delivered to appellees Bean an affidavit which they contend establishes as a matter of law that they were innocent purchasers for value without notice. Among other things, this affidavit states that this particular property was acquired by Mrs. McQueen on March 21, 1936; that said deed was taken by me under the name of Mrs. R. C. Harkness and at that time I was the wife of Ralph C. Harkness; that she was divorced from Ralph C. Harkness on December 22, 1945; that she was married to Ralph C. Harkness in the year of 1919; that she paid the sum of $500 for the prop' erty, $75 of which was in cash and the balance of which was payable in monthly installments of $25 each until the full amount of said purchase price was paid; that all of said purchase price, both cash payment and monthly deferred payments, together with interest thereon were paid by me out of my separate funds and estate and none of said funds used in the payment of said property were community funds; that in the proceedings wherein she was granted a divorce evidence was introduced before the court that the property above mentioned was and is my separate property and that my husband had no community interest therein, and the court found "that no property either real estate or personalty was accumulated during said marriage." Further stating "this affidavit is made for the purpose of inducing Edgar P. Bean and wife, Blanche M. Bean, to purchase said property without joinder of my former husband, R. C. Harkness, and I know that they are relying upon the truth and correctness of this affidavit in making such purchase." In the case of Alexander v. Harris, Tex. Civ.App. 254 S.W. 146, 148, the court quoting from Pomeroy's Equity Jurisprudence 659, dealing with a question of innocent purchasers it is stated: "A person who purchases an estate, although for a valuable consideration, with notice of a prior equitable right, makes himself a mala fide purchaser, and will himself even be held a trustee for the benefit of the person whose right he sought to defeat." This to our minds is the correct rule in Texas. See also Alexander v. Harris, Tex.Civ.App., 254 S.W. 146 and cases there cited. The very affidavit upon which the appellees Bean rely to establish the fact that they are innocent purchasers in good faith and valuable consideration without notice of appellant's claim, gave them actual knowledge that the property with which they were dealing was presumptively community property of Mrs. McQueen and the appellant, and the only matter replied on to overcome this presumption was the statements made by Mrs. McQueen, who was an interested party. The evidence further shows that no inquiry whatsoever was made with reference to the whereabouts of Mr. Harkness and Mrs. McQueen testified that had such inquiry been made of her that she would have informed them of the name of the company for which her former husband worked. Being charged with notice that the property being dealt with was presumptively the community property of Mrs. McQueen and her former husband, Mr. Harkness, the statements of Mrs. McQueen, who was an interested party, to the effect that the property in question had been paid for from her separate estate was not sufficient to establish, as a matter of law, the bona fides of appellees Bean in this transaction. There is some doubt as to its sufficiency as a matter of fact. Therefore the judgment of the trial court in favor of appellees Bean cannot be sustained on this theory.

We also sustain appellant's Point No. 10 wherein it is contended that the court erred in granting appellees McQueen's motion for instructed verdict in their favor as to appellant's claim for fraudulent concealment and withholding his one-half of the balance of $2,500 from proceeds of the sale of lots 40 and 41, Block 203, Magnolia Park Addition to the City of Houston. This property was sold by joint deed of appellant and the appellee Mrs. McQueen. The evidence shows that at the time of the sale the

appellant was absent from the City of Houston and that the transaction was handled by the appellee Mrs. McQueen who was then his wife. She represented to appellant that the sales price of the property was either the sum of $4,500 or $5,000. In either event she remitted the sum of $2,500 to appellant, representing his one-half interest in the property. Appellant offered a witness who testified, in effect, that the appellee Mrs. McQueen had told her that she had put one over on Mr. Harkness; that she had represented to him that she had received $5,000 for the property when as a matter of fact she had received $7,500. This statement was denied by Mrs. McQueen. However it was for the jury to say how much she had received from the sale of the property and whether or not appellant had been defrauded by the appellee Mrs. McQueen.

■ We also think the trial court erred in instructing a verdict against the appellant on his claim to certain furniture which he contended constituted and was community property of appellant and Mrs. McQueen. It was shown that on the date the divorce was granted to appellee, Mrs. McQueen, there was on hand certain furniture which had been acquired during the existence of the marriage relation between her and appellant, some of which Mrs. McQueen still possesses. While it is true that Mrs. McQueen testified that appellant had given her the furniture in question, being an interested witness as she was, and in view of her evidence with reference to the other property involved, the most her evidence did was to raise an issue of fact for the jury to determine as to the status of the furniture.

■ We agree with appellees that appellant failed to make out a case for reimbursement for community funds, if any, that went into the purchase of lots 38 and 39 of Block 103, Magnolia Park Addition to the City of Houston. As heretofore stated, appellant relied upon the statutory presumption that this property constituted a part of the community estate of himself and Mrs. McQueen for the reason that it was acquired during the existence of their marriage relation. This property was deeded to Mrs. McQueen, then Mrs. Harkness, as her separate property and to constitute her separate estate. This was with the full knowledge of Mr. Harkness, who was then her husband, and further, the appellee Mrs. McQueen testified that the purchase price was paid from her separate estate. We are of the opinion that the recitation of the deed itself to the effect that the consideration was paid from the separate estate of Mrs. McQueen and conveying to her the property for her sole and separate use and benefit was sufficient within itself and did overcome the statutory presumption that it was community property. The holding of the court in the case of Janes v. Gulf Production Company, supra, supports appellees' contention in this regard; therefore appellant's points complaining of the action of the trial court in instructing a verdict against appellant as to his cause of action relating to this particular piece of of property are overruled. That part of the judgment of the trial court as it effects appellant's claim to any of the proceeds from the sale of lots Nos. 38 and 39, Block 203, Magnolia Park Addition to the City of Houston is affirmed. The balance of the judgment is reversed and remanded for further proceedings.