**RIPPY et al. v. RIPPY.**

No. 7692.

Court of Civil Appeals of Texas. Austin.

April 6, 1932.

Rehearing Denied April 27, 1932.

J. Tom Higgins, of Lampasas, and Cox & Hayden, of Abilene, for plaintiffs in error.

R. L. Walker and J. C. Abney, both of Lampasas, for defendant in error.

BLAIR, J.

The parties will be designated appellants and appellee.

Appellee, Mrs. Hassie Rippy, the surviving wife of T. E. Rippy, deceased, sued Ed. Hocker, the independent executor of the estate of T. E. Rippy, and appellants, the children of the said T. E. Rippy by a former marriage with Mrs. L. J. Rippy, deceased, alleging that the property described in her petition was the community estate of herself and the said T. E. Rippy, and prayed judgment for a community undivided one-half interest therein, and for a partition thereof by commissioners. Appellants answered, setting up the following two defenses: (1) That the property was not community, but the separate estate of T. E. Rippy, deceased; (2) that the will of the said T. E. Rippy was duly probated without objection or contest by appellee; that she elected to take certain property under the terms of the will inconsistent with a community interest, and was therefore estopped to claim the property as community.

A trial to the court without a jury resulted in judgment for appellee as prayed; hence this appeal.

Appellants contend that the undisputed evidence establishes their two defenses pleaded as a matter of law, and that judgment should be here rendered for them. We do not sustain the contentions.

On the issue of whether the property was community or the separate estate of T. E. Rippy, deceased, only appellee and Ed. Hocker, the executor of the T. E. Rippy estate, were witnesses, the remaining evidence being documentary; and as a whole the evidence is undisputed. It shows that in 1901 T. E. Rippy married appellee. At that time T. E. Rippy owned a 500-acre farm in Coleman county, a residence in the town of Coleman, and had about $300 in cash, all of which was his separate property. Appellee had no property at the time of her marriage. In 1905 the farm was sold for $1,500 in cash, and notes aggregating $10,500, which notes were paid from time to time until 1912, when they were released. In 1905 a house and lot was purchased in Coleman for $1,600 cash, and sold the following year for $1,800 cash. Appellants admit this was community property. Appellee and T. E. Rippy made their home in the residence in Coleman owned by Rippy at the time of the marriage until 1906, when they moved to Lampasas, Tex.; and in May, 1906, this Coleman residence was sold for $1,300 in cash and $1,200 in notes. In 1906 a house and lot was purchased in Lampasas, the deed being to T. E. Rippy, and was used as the homestead of the parties for about one year, and then sold. In 1907 lots 1 and 2, block 34, Barnes addition to the city of Lampasas, were purchased for $2,000 cash, the deed being to T. E. Rippy; and with the exception of a few months when the parties purchased a hotel at Lampasas and operated it, the above property was their homestead. In 1907 and 1909 two other pieces of property were purchased for $1,000 each, in cash, and the deeds were made to T. E. Rippy. In addition to these three pieces of property, there was on hand at the time T. E. Rippy died vendor's lien notes aggregating $4,500; cash in bank, $7,366.65; and certain shares of stock in oil companies, which the commissioners herein appointed valued at $400. The farm was rented until sold, and during the entire 28 years of this marriage relation rooms in the various residences occupied as the homestead were rented as well as the other property, and T. E. Rippy was paid all these rents, and they were deposited to his account in various banks, and commingled with his separate funds. In the judgment of the trial court are the following findings of fact:

"That out of the proceeds of the sale of said Coleman property, and from funds acquired by the joint labors of plaintiff and T. E. Rippy, and from interest acquired from loans made by T. E. Rippy, the real estate and personal property described in plaintiff's petition was acquired during the marriage relation between said T. E. Rippy and plaintiff. That there has been and was at the time of purchase of said real estate and personal property described in plaintiff's petition such a mixing and mingling of the separate estate of T. E. Rippy and plaintiff that it is impossible to determine what part of said property was the separate estate of T. E. Rippy and what part was the community estate between T. E. Rippy and plaintiff; that at the time of the death of the said T. E. Rippy the said marriage relation with plaintiff still continued and that the community estate of the said T. E. Rippy and plaintiff consisted of the property described in plaintiff's petition."

Article 4619, R. S. 1925, provides that, except as therein stipulated, all property acquired by either the husband or wife during marriage is presumed to be community property. The statutory presumption further obtains that "all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved." Numerous decisions hold that these presumptions obtain as to real estate acquired during marriage, and that it makes no difference whether the conveyance of same be made to the husband or to the wife, or to both; and that the burden is upon the party alleging the contrary to satisfactorily prove the assertion. Lott v. Keach, 5 Tex. 394; Schmeltz v. Garey, 49 Tex. 49; Glasscock v. Hamilton, 62 Tex. 145; Oppenheimer v. Robinson. 87 Tex. 174, 27 S. W. 95; Duncan v. Bickford, 83 Tex. 322, 18 S. W. 598; Speer's Law of Marital Rights, p. 425, § 350; and p. 428, § 352.

In the instant case there is no dispute that all the property in question was acquired during the marriage, and that at the time the marriage was dissolved by the death of T. E. Rippy all the property was in his or their possession. The only proof offered by appellants tending to show that the property was not community, but the separate estate of T. E. Rippy, was that he had a separate estate when he married appellee and that she had no property; that Rippy's estate was sold, and from 1 to 4 years thereafter the real estate in suit was purchased and the conveyances taken in his name.

In Speer's Law of Marital Rights, p. 434, the rule applicable is stated as follows: "The facts that at the marriage the husband had much money, and the wife nothing, and that during the marriage relation the parties decreased in fortune, making nothing, will not rebut this presumption unless the purchase money or consideration is explicitly traced to the separate property of the husband." Schmeltz v. Garey, 49 Tex. 49; York v. Hilger (Tex. Civ. App.) 84 S. W. 1117.

With respect to the oil stock and the vendor's lien notes aggregating $4,500, held in the name of T. E. Rippy at the time of his death, there was no evidence that they were his separate property, or that same had been purchased with his separate funds. The statutory presumptions therefore obtain that this was community property.

With reference to the $7,366.65 on deposit in two banks in the name of T. E. Rippy, appellants contend that same was his separate property under the terms of article 4622, R. S. 1925, which provides that "funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account." Manifestly this statutory presumption was meant for the guidance of the bank in its dealings with the deposit or account of the spouse in whose name it is, and was also meant to apply to dealings of creditors generally with the spouse in whose name it is. "It was never meant to supplant, even as to such deposit itself, the general presumption" of community estate above discussed. Speer's Law of Marital Rights, p. 427, § 351; Winters v. Duncan (Tex. Civ. App.) 220 S. W. 219; Guaranty State Bank v. Shirey (Tex. Civ. App.) 258 S. W. 1109. No evidence was offered by appellants showing, or tending to show, that these deposits were the separate property of T. E. Rippy, except that the deposits possibly represented commingled separate and community funds of appellee and T. E. Rippy.

The trial court also found that all of the property involved here was purchased with or represented the commingled separate and community funds of the parties, and that it was impossible to determine what part was community and what part was separate property or funds. Lists of notes shown to be in the handwriting of T. E. Rippy were introduced in evidence without objection; and they show that thousands of dollars in interest were collected during the marriage relation. Thousands of dollars of rents were also collected during the marriage relation on both the separate estate and community property, and all funds collected from all sources were deposited to the account of T. E. Rippy from time to time in various banks. These commingled funds became community property under the decisions in this state, and the statutory presumptions which obtain as above discussed. Saylor v. Saylor (Tex. Civ. App.) 20 S.W.(2d) 229; Willcutt v. Willcutt (Tex. Civ. App.) 278 S. W. 236, 237.

Passing to a consideration of whether appellee was required to and did elect to take under the terms of the will of T. E. Rippy, inconsistent with her claim to a community interest in the property, we think the trial court correctly held that she was not required to and did not so elect. The following portions of the will are involved:

"2nd. I give and bequeath to my beloved wife, Hassie Rippy, the sum of Five Hundred Dollars in cash, to be paid to her by my executor hereinafter named, as soon after my decease as shall be found convenient. And I also wish my said wife to have the use of and the rents and revenues of our home in which we now live during the term of her natural life, but after her death the title to same to be vested in my children hereinafter named. I also give to my wife all household and kitchen furniture. * * *

"4th. Subject to the above bequests, I give, bequeath, and devise unto my children, to-wit: (naming them) all the rest and residue of my property, real, personal or mixed of which I may die seized and possessed of, or to which I may be entitled."

There is nothing in the will which shows that the testator claimed or intended to dispose of any more than his one-half community interest in whatever property the parties had. He called the homestead "our home in which we now live." This was the only property, except the household effects, which he in any way attempted to describe. He merely directed that his wife be paid $500 out of his estate, and that she have the household effects and the homestead until her death, and that after her death title to the homestead should vest in his children. Since the court found and concluded that the property was all community property, testator could only dispose of his community interest by will, and we think that is all he attempted to do.

Clearly there is no language used which would require appellee to make an election as to whether she would take under the will.

■ But, if the terms of the will required appellee to elect to take thereunder, the evidence is undisputed that she had no knowledge of her rights in the premises, nor that she was required to choose between inconsistent rights. The evidence is undisputed that the executor paid her the $500 bequest, and that nothing was said by either party as to her interest in the estate. The inventory and appraisement filed in the probate court shortly before the $500 was paid recited that neither the executor nor the appraisers knew whether the property was community or separate property. About one month after the will was probated, appellee wrote one of her stepdaughters that a lawyer had told her she was entitled to one-half of the estate, and that she was entitled to one-third of her husband's separate estate; and that "I told him Mr. Rippy didn't want me to spend a cent of his money in his lifetime, and he didn't want me to have it when he was dead." This letter, of course, was not an election, and unquestionably showed that appellee was still in doubt as to her rights, and that she accepted the $500 without any knowledge that she was required to choose between two inconsistent rights.

In Dunn v. Vinyard (Tex. Com. App.) 251 S. W. 1043, 1046, the rule applicable here is stated as follows: "In the absence of statutory regulation, it may be generally said that two things are necessary in order that acts relied upon will amount to an election: First, the party must have had knowledge of his rights; that is, he must have had knowledge of the condition and extent of the estate, and of his duty to choose between the inconsistent rights; second, that he intended to elect, as shown by his words and acts, viewed in the light of all the circumstances." Wichita Valley Ry. Co. v. Somerville (Tex. Civ. App.) 179 S. W. 671; Packard v. De-Miranda (Tex. Civ. App.) 146 S. W. 211.

■ By several propositions appellants complain that the trial court erred in admitting over their objections certain testimony of appellee, which related to transactions with T. E. Rippy, testator, during their marriage relation, and had reference to the property in controversy, as being in violation of the provisions of article 3716, R. S. 1925, which inhibits, in actions by or against executors, testimony as to any transaction with or statement by testator, unless called for by the opposite party. We will not undertake to discuss the testimony objected to, nor its admissibility, because, conceding its admission to be error, such error will not require a reversal of the case. The trial was to the court without a jury. No findings of fact or conclusions of law were requested or filed. No showing is made that the trial judge considered the improper testimony; and there is sufficient documentary evidence and evidence not objected to in the record to sustain the judgment rendered, as hereinabove pointed out. Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195. The alleged improper testimony related to the question of whether the property involved was community, or the separate estate of T. E. Rippy. Under the documentary evidence and the evidence admitted without objection, and the statutory presumptions which obtain as to community property as above discussed, the judgment finds ample support in the evidence, without regard to the alleged improper testimony; and the judgment will be affirmed.

Affirmed.