**H. A. PHILLIPS, Trustee, Appellant,**

v.

**Betty VITEMB and E. L. Hillman,
Appellees.**

No. 16013.

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

Rehearing Denied July 26, 1956.

**12**

Thad Grundy, Houston, Tex., for appellant.

Buck C. Miller, Houston, Tex., for appellees.

Before RIVES, CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The Trustee appeals from an adverse judgment of Referee and District Court denying the petition to turn over a certain piece of real property, comprising a rent-producing apartment house in Houston, Texas, on the grounds that it had been purchased by Betty,[1] after Mike's bankruptcy, with money belonging to the Bankrupts' estate, and the record title had been placed in the name of Hillman for the sole purpose of fraudulently concealing the existence of the property from Mike's creditors.

The Trustee's theory, specifically alleged in the petition, that funds were traced from revenues received by Betty from Mike in the operation or sale of the lease on a Miami, Florida, hotel, a property fraudulently concealed from creditors, failed for adequate proof. But as the case proceeded, evidence received without objection, offered by attack and defense alike (and therefore the basis upon which the case as made is to be judged, F.R.C.P. 15(b), 28 U.S.C.A.; General Orders 36, 37, 11 U.S.C.A. following section 53; 1 Collier on Bankruptcy, 14th Ed., § 2.81; 2 Collier, supra, § 18.22), was concerned almost exclusively with Betty's bank account, at first a checking, later transmuted into a savings account. Independent of the subsidiary question which seemed to preoccupy the Referee and District Court concerning the origin of one deposit of $2,000, the status of this bank account is of partial, decisive significance, since the status (separate or community) of the funds drawn from the account used for the down payment for the real property, along with the status of the credit for the payment of the deferred balance, determines the status (separate or community) of the realty. If these were community property, a turnover should

---

1. The cast of characters is:

Mike: Mike Vitemb, with Sam Vitemb, his son, and their partnership Stalco TV & Appliance Company, a partnership, are the Bankrupts.
Betty: Betty Hughes Vitemb, wife of Mike.
Hillman: E. L. Hillman, husband of Mrs. Hillman, Betty's sister.
Mrs.
Hillman: Sister of Betty and wife of Hillman (she was authorized to draw checks on Betty's bank account)

Time of Events

December 6, 1952: Betty and Mike's marriage.
February 13, 1953: Date of Bankruptcy.
April 16, 1954: Hearings commenced on objections to discharge of Mike.
October 1, 1954: Referee's order denying Bankrupts' discharge.
November 1954: Mike convicted of fraudulent concealment of assets and sentenced to prison.
January 1955: Betty discloses that she owned apartment house in question purchased March 31, 1954, for her by and in the name of Hillman.
February 28, 1955: District Judge affirms Referee's order denying Bankrupts' discharge, In re Stalco TV & Appliance Company, D.C.S.D.Tex., 129 F.Supp. 490.

have been granted, if they were Betty's separate property, the denial was correct and should be affirmed.

Naught but the closing on March 31, 1954 appears concerning negotiations or agreement for purchase of this property. Hillman alone participated as the named, and apparent, purchaser conscious that Betty's purpose in having the property taken in his name for her was to avoid difficulties with Mike's creditors. Hillman made [2] the down payment and expressly assumed payment of the outstanding balance on the existing vendor's lien and deed of trust.

The status of the principal item, $1,700, depends directly on the status of the like amount in Betty's account withdrawn on March 25, 1954. The question of the status of this withdrawal from that account arises from the uncontradicted fact that there had been a substantial increase in that account by deposits made during the time of Betty and Mike's marriage.[3]

2. The purchase price paid by Hillman was:

| | |
|---|---|
| Cash | $2,700.00 |
| Balance Vendor's lien | |
| (Original Note, | |
| Sept. 1952 $7,500.00, | |
| Monthly Payments $75.00) | 6,795.50 |
| Total | $9,495.50 |

The $2,700.00 cash payment was made up of the following:

$1,700.00 Cashier's check purchased by Mrs. Hillman March 25, 1954 with funds withdrawn by her that day from Betty's bank account.

600.00* Claimed by Betty and Hillman to be repayment by Hillman of a loan made to him by Betty in 1951.

400.00* Claimed by Hillman and Betty to have been advanced at time of closing, as loan by Hillman to Betty from cash which he just happened to be carrying and needed, he claimed, to make up unanticipated balance of down payment, cost of fence, and other closing adjustments.

$2,700.00 Total

*Note: Trustee attacks these two items and the $2,000 cash deposit as highly suspicious, inherently improbable and incredible, a contention we are inclined to think of considerable merit though not reached in view of the disposition otherwise made.

3. From undisputed bank records, clarified and supplemented by stipulation filed on the Court's suggestion, the following shows the increase in this account (the change from checking to savings, without significance, is ignored):

| | | |
|---|---|---|
| Balance at time of marriage | | $2,458.40 |
| Deposits during marriage: | | |
| Miscellaneous items through March 26, 1954 (thirteen separate deposits) | $ 674.20 | |
| | 1,468.40 | |
| | 1,123.93 | 3,265.53 |
| *August 23, 1953 cash from sale of Betty's car | | 2,000.00 |
| Total | | $7,723.93 |
| Balance March 25, 1954, prior to withdrawal of $1,700.00 | | $6,998.93 |

*Note: Claimed by Betty to have been received in cash from sale of an unidentified car purchased by her at an unspecified time prior to marriage, sold to an unidentified purchaser and attacked by Trustee as inherently incredible for want of normal corroborative data, title certificate, etc., for sale or purchase of automobile (see Items * note 2, supra).

We do not regard the challenged $2,000 deposit of much final significance, for whether, as claimed by Betty, it was the proceeds of admitted separate property or, as contended by the Trustee, was inadequately identified cash received and handled either under circumstances casting considerable suspicion on its origin or, in any case, received during coverture and thereby carrying the usual presumption of community funds, the status of the $1,700 withdrawal will be fixed by the status of the miscellaneous deposits, $3,265.53, during coverture and the effect, if any, of commingling them with admitted ($2,458.40) separate property. The question is two-fold: (1) was the $3,265.53 separate or community? (2) if community, what did its commingling with separate property do to the whole account, i. e., was it to be treated thereafter as separate or community, or some of each?

■■ Certainly, the record reflects no *facts*, as such, which show these deposits to have been the separate property of Betty. While the deposits are admitted and uncontradicted, it is likewise agreed that the record fails to indicate the source of any item comprising this $3,265.53. It was, singly and collectively, then within the literal statutory and applicable definition of community property under Texas law.[4] This is so because, in statutory definitions which are reciprocal, that which is received during coverture is community *unless* it qualifies as separate property. But none of this sum ($3,265.53) is shown by any *fact* evidence to qualify as the wife's separate property since, by statute, this is confined to that owned or claimed by her before marriage and that acquired afterward by gift, devise, or descent.[5]

■ Received as it was, entirely during coverture, from sources never shown to give it a status as her separate property, the presumption is that this was community property. Speer Law of Marital Rights in Texas, Third Edition, Section 298; Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226; Dipuccio v. Hanson, Tex.Civ.App., 233 S.W.2d 863; Mason v. Crump, Tex.Civ.App., 254 S.W. 2d 831, writ refused N.R.E. The presumption is rebuttable but, " 'It will be borne in mind that the presumption of the community character of property acquired by the spouse during marriage is very strong, and can be overcome only by clear and convincing proof that it belongs to one or the other of them, and that the burden of proving its separate character is always upon him who asserts it.' " Harkness v. McQueen, Tex.Civ. App., 232 S.W.2d 629, 633.

Betty offered no *facts* to overcome this presumption and the record, undisputed but made doubly clear by the stipulation, affirmatively reflects that the source of these deposited funds is unknown. And what little is indicated is adverse to Betty's contention, e. g., unknown amounts received, apparently as would any wife, from her husband, Mike, in 1953 and perhaps some personal earnings —each of which is typical community property.

■ But Betty, undaunted by absence of *facts*, fights fire with fire, and against the Trustee's presumption, art. 4619, she counters with one of her own [6]

---

4. Art. 4619, Vernon's Ann.Civ.Stat. of Tex., Community Property: Section 1. "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; * * *."

5. Art. 4614, Vernon's Ann.Civ.Stat. of Tex., Wife's Separate Property: "All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife. * * *"

6. Art. 4622 Funds In Bank: "Funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account."

apparently in the hope that one will precede the other in point of time, exceed the other in terms of weight or, at any event, produce an equilibrium through which, as the legendary possessor with nine points in her favor, she would yet prevail because her pursuer would fail. But art. 4622 was not intended as a substitute for art. 4614 to set up a new category of separate property. Its primary purpose is to protect banks who might otherwise be exposed to unknown liabilities. It does not supplant the presumption that property acquired during marriage is community property. Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494, error refused; Callaway v. Clark, Tex.Civ. App., 200 S.W.2d 447, error refused. If the Trustee's standing is considered to be that of a creditor, this controversy not being with the depository bank, the presumption of art. 4622 was sufficiently overcome, see Cantwell v. Wilson, Tex. Civ.App., 241 S.W.2d 366, by the uncontradicted evidence showing that this amount was made up of numerous miscellaneous deposits during marriage with no indication whatsoever that any part of it came by any of the events specified in art. 4614 or, for that matter, the occurrence of any such events, e. g., death of a close relative from whom money might have been received through descent or bequest, etc. But in testing this, the Trustee has the standing of

Mike, the Bankrupt, 11 U.S.C.A. § 110, Section 70, Bankruptcy Act, 4 Collier on Bankruptcy, 14th Edition, Section 70.31, and art. 4622 does not apply to contests between the spouses themselves or their successors.[7]

■ Concluding, as we do, that these deposits ($3,265.53) were, on this record, community property as a matter of law, what did this do to the account when these community funds were commingled with admitted separate property? From the nature of a bank account, once the funds were deposited, each lost its separate identity and all became a part of a commingled whole. Were the account to remain static or merely increase, it could, of course, on a complete liquidation be apportioned in the exact amount of the deposits of admitted separate property and that deemed community. But partial withdrawals without specific direction indicating the exact origin of the funds to be disbursed are drawn from the fund as a whole. So the act of depositing and the later act of a partial withdrawal is a commingling. The effect of this very situation is described in Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529, 532, "Generally speaking, it is the law that a bank account consisting of separate and community funds commingled in such a manner that neither can be distinguished from the other must be regarded as a community account." Since, to Texas,

7. Hodge v. Ellis, 154 Tex. 341, 277 S.W. 2d 900 at 907: "The presumption concerning separate property status of bank accounts established by art. 4622, Vernon's Tex.Civ.Stats.Ann., does not apply where the contest is between the spouses themselves or their successors. It was so held by our Courts of Civil Appeals in Rippy v. Rippy, [Tex.Civ. App.] 49 S.W.2d 494, and Callaway v. Clark, [Tex.Civ.App.] 200 S.W.2d 447, 448, and in each instance we 'refused' a writ of error. As before indicated, the general practice of the wife of putting erstwhile community funds into a bank account in her own name, even where the husband in effect concurs with the practice 'for business reasons', can hardly be considered a gift from him of all such funds as a matter of law, without thereby validating agreements as to the status of future acquired property. We may add that the fact of intermingling the two types of funds beyond ability to resegregate them does not of itself cause the aggregate to be separate but rather the contrary. Rippy v. Rippy, supra."

Sorenson v. City National Bank, 121 Tex. 478, 49 S.W.2d 718; Teague v. Fairchild, Tex.Com.App., 15 S.W.2d 585, presenting circumstances of actual conduct and participation by the husband in the opening of the account, the making of the particular deposit, etc., from which is inferred a clear and present purpose by him to make a gift of community property to the wife's separate estate, are not to the contrary. Guaranty State Bank v. Shirey, Tex.Civ.App., 258 S.W. 1109, writ of error dismissed, was a controversy between the wife and the depository bank.

"It is a well established rule * * * that where the husband or wife permits his or her separate property to become so commingled with community property that it cannot be identified, the separate property so commingled becomes community property * * *", Taylor v. Suloch Oil Company, Tex.Civ.App., 141 S.W.2d 657, 660, writ dismissed, judgment correct, and that, "'* * * without such proof as to how much separate and how much community means were used in the purchase of * * * [property] in the possession of the wife, it cannot be determined that she has any separate interest in [the property] whatever,'" Walker-Smith Co. v. Coker, Tex. Civ.App., 176 S.W.2d 1002, 1008, error refused, want of merit, quoting from Smith v. Bailey, 66 Tex. 553, 554, 1 S.W. 627, 628, it is equally plain that, on this record, the whole of this bank account took on the status and character of community property. McFaddin v. Commissioner, 5 Cir., 148 F.2d 570; Hodge v. Ellis, supra; Texas Jurisprudence, Ten-Year Supplement, Vol. 5, Husband and Wife, Section 67A, page 595.

Analyzing the remainder of the total purchase price, the acceptance by us of Betty's claim that Hillman's payment of $600, in repayment of an earlier loan by her to him, was her separate property, brings us to the problem, common to both, whether the credit for the repayment of the $400 loan (advance) from Hillman and the ultimate payment of the deferred mortgage debt ($6,795.50) was community, or that of Betty's separate estate.

■ In the process it may be assumed that Betty alone undertook to repay the cash to Hillman and save him harmless from the mortgage debt liabilities he assumed as he fronted for her because there is no showing that Mike knew of, or participated in, any of these transactions. Indeed, that fact, highlighting a seeming paradox, is of dominant significance, for unless the conveyance clearly and affirmatively reflects (as this one does not) that it is to be property of the separate estate so that, by the contract between vendor and purchaser or otherwise, the separate estate is alone obligated for the deferred purchase price, the total nonparticipation of the husband in the transaction makes the wife's agreement to pay the deferred price a community debt and the property, to the extent it is procured thereby, community property.[8] Reflection dispels the para-

8. Hudspeth v. Hudspeth, Tex.Civ.App., 198 S.W.2d 768, 771, writ refused N.R.E.: "The presumption is that property bought solely on the wife's credit is community property. Heidenheimer Bros. v. McKeen, 63 Tex. 229; Harrison v. Mansur-Tibbets Implement Co., 16 Tex.Civ.App. 630, 41 S.W. 842; Kearse v. Kearse, Tex. Civ.App., 262 S.W. 561, 564, affirmed, Tex.Com.App., 276 S.W. 690. Although the textwriter in Speer's Law of Marital Rights, Sections 293, 294, 369, 429, and 430, criticizes these decisions, his criticism seems not to go to the presumption but rests rather on the idea that if the property eventually is paid for out of the wife's separate funds, it should become her separate property. * * * It is our opinion that the cases cited impel the conclusion that the property, at the time of its purchase, became community property to the extent that the purchase price was evidenced by the note executed by Mrs. Hudspeth. The 1942 Chevrolet automobile was purchased with funds borrowed by Mrs. Hudspeth and for which she gave her note. From what has been said, it follows that this car is community property."

Hodge v. Ellis, supra, at 277 S.W.2d 904, 905: "The elemental presumption in favor of the community as to land acquired in the name of either spouse during the marriage is, indeed, sometimes displaced by a presumption in favor of the separate estate of the wife where the deed of acquisition recites either that the land is conveyed to her as her separate property, or that the consideration is from her separate estate, or includes both types of recitation. * * * But the situation is otherwise when the husband is not a party to the purchase. In Kearse v. Kearse, Tex.Com.App., 276 S.W. 690, where the transaction was between the wife and her daughter, the consideration being all in the form of notes signed by the former only, the court, in ruling against the wife's claim of separate property, emphasized the fact of nonparticipation of the husband as distinguishing cases like Goldberg v. Zell-

dox for the husband's participation does, or may, afford the basis for inferring his agreement,[9] as manager of the community estate, to lend the community's credit in order that she may buy property for her separate estate, or as a gift to the wife by the husband of property purchased for her on credit, including community credit.

 The result is that all of the purchase price except the $600 was by community funds and credit, and was therefore community property of Mike and Betty.[10] The Trustee's petition that Hillman and Betty should be directed to turn over title and possession of the property ought, therefore, to have been granted. The judgment of the District Court is accordingly reversed and rendered for the Trustee to that extent,[11] but is remanded for such other, further and not inconsistent proceedings below, if any, as may be proper for accounting or otherwise.

Reversed and rendered in part and remanded.

ner [Tex.Com.App., 235 S.W. 870] and Kahn v. Kahn [94 Tex. 114, 58 S.W. 825]. The Kearse case and our decision in Van v. Webb, 147 Tex. 299, 215 S.W. 2d 151, also point up the difference, from the standpoint of presuming a gift between situations where the husband is a party and those where he is not."

And see, The Community Property Law of Texas, W. O. Huie, reprinted Volume 13, Vernon's Tex.Civ.Stats.Ann., pages VII, XVI et seq.: "When property is bought on credit during the marriage, the first step in the analysis is an application of the presumption of community. To the extent that the purchase price is not paid in cash at the time the property is acquired, it is presumed that the property is community. * * * The presumption that a purchase is on community credit is not rebutted by evidence merely that separate money is later used to discharge the purchase-money debt. * * *"

See also Speed v. Gilliland, Tex.Civ. App., 18 S.W.2d 762, error refused; Morris v. Neie, Tex.Civ.App., 212 S.W.2d 981, writ refused N.R.E.; Brick & Tile v. Parker, 143 Tex. 383, 186 S.W.2d 66; Hestand v. Johnson County, Tex.Civ. App., 206 S.W.2d 665.

9. See The Community Property Law of Texas, W. O. Huie, supra: " * * * It seems proper to conclude, therefore, that the husband can lend community credit to the wife in order that she may buy property for her separate estate if there is an understanding between them at the time of the deed that the purchase-money debt is to be paid out of the wife's separate estate. Also, the husband can make a gift to the wife by buying property for her on credit including community credit."

10. This is not, as Betty claims, taking revenue from her separate property, or her personal earnings for the payment of her husband's debts proscribed by art. 4616: "Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband nor of torts of the husband." This would apply, of course, only to the $1,700 cash payment and as to it, she made no effort to prove that any or all of it or the bank account came from the sources specified in art. 4616. The account being commingled made this payment community and transfer of such funds into property of a different form (here real estate) would not carry forward any exemption. Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047; Walker-Smith Co. v. Coker, supra.

11. Betty and the Trustee are owners in common with the following undivided interests:

Betty 600/9495.50
Trustee 8895.50/9495.50