**Mary Hare STANLEY, Appellant,**

v.

**Theodore Hawkins STANLEY, Appellee.**

No. 6610.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 24, 1956.

Rehearing Denied Oct. 22, 1956.

Simpson, Clayton & Fullingim, Amarillo, for appellant.

Sanders, Scott, Saunders & Smith, Amarillo, for appellee.

PITTS, Chief Justice.

This majority opinion has been prepared for announcement in lieu of a minority opinion. This appeal is from a judgment rendered in a case filed by appellant, Mary Hare Stanley, against appellee, Theodore Hawkins Stanley, seeking a divorce and an adjudication of property rights between the parties. No children were born to the marriage. The case was tried to the court without a jury and judgment was rendered granting appellant a divorce and dividing the property between the parties by awarding appellant approximately two-thirds of the property, except for the sum of $6,711.37 which was separately traced into the home hereinafter mentioned and which the trial court awarded to the appellant as her separate property, and by awarding to appellee approximately one-third, after deducting the sum of $6,711.37 from the total value of the property as appellant's separate property. Ap-

pellant perfected an appeal to this court but complains here only about the division of the property. No complaint is here made by either party about the issue of divorce.

In her points presented appellant charges in effect that the trial court erred in finding and concluding that appellant had forfeited her right to her separate estate owned by her before her marriage to appellee; that the trial court erred in applying the doctrine of co-mingling of property in this case and in concluding that the property in question, except for the sum of $6,711.37, was community property between the parties and that appellant was charged with the burden of proof in establishing her rights, if any, to any separate property she claimed; that the trial court abused its discretion in adjudicating the rights of the parties in connection with the property awards; that the trial court erred in finding that appellee did not, by his acts, consent, acquiescence and conduct, give to appellant as her separate estate all of the income, rents and revenues, increases and earnings, realized from her separate property during the marriage of the parties; that the trial court erred in its failure to find that appellee was indebted to the separate estate of appellant by reason of loans made to him by appellant out of her separate estate; and in effect that the evidence did not support the material findings of the trial court.

Appellee joins issue with appellant on the assignments presented and likewise files cross assignments complaining because the trial court found and concluded that the sum of $6,711.37 was separate funds of appellant's and because it failed to charge against any separate estate found to belong to appellant the sum of $4,500 advanced by the community estate to appellant to pay her income taxes before the marriage of the parties.

In its judgment the trial court described the property here involved and at the request of appellant made and filed separately its findings of fact and conclusions of law, which support the judgment. In its judg-ment it listed the properties and their agreed values as follows:

| "In Possession of T. H. Stanley | Values |
| --- | --- |
| Cowboy Cafe, Canyon, Texas | $ 9,350.00 |
| Equity in 1955 Chevrolet Station Wagon | 611.86 |

| In possession of Mary Hare Stanley | |
| --- | --- |
| Southern Finance Company | 10,198.20 |
| Cash in Bank. | 807.91 |
| Cashier's Check at First National Bank, Amarillo, Texas | 5,114.09 |
| Cash in Mrs. Stanley's possession | 1,000.00 |
| Home at 1511 Austin, Amarillo, Texas | 26,300.00 |
| Cash in Deposit box at First National Bank, Amarillo, Texas, | 37,500.00 |
| 1952 Cadillac Automobile | 1,450.00 |
| Traveler's Checks and Cash | 400.00 |
| Cash, Money Orders and Traveler's Checks | 3,600.00 |
| Total Value | $96,332.06." |

After deducting the value of appellant's separate property in the sum of $6,711.37 from the total value of the said sum, property of the value of $89,620.69 remains, which latter sum the trial court found and concluded to be community property between the parties and awarded appellant property of the value of $59,738.80 and appellee property of the value of $29,881.89, finding in support thereof that such a division was fair and equitable. The only real estate shown is the "Home at 1511 Austin, Amarillo, Texas," valued at $26,300, which among other property was awarded to appellant. Appellee was awarded the Cowboy Cafe at Canyon, Texas, valued at $9,350 and all equity of the value of $611.86 in the 1955 Chevrolet Station Wagon, together with cash in the sum of $19,920.03, and appellant was awarded the remainder of the property. Appellee voluntarily placed in the registry of the trial court a special warranty deed in favor of appellant to the Amarillo home located at 1511 Austin Avenue, valued

at $26,300 and appellant has placed in the registry of the trial court a cashier's check in the sum of $19,920.03, both placed there subject to order as a result of a final judgment in this case.

The record reveals that the parties were married from August 17, 1949, until on or about September 17, 1954. The trial court found that during the marriage their properties had earned $84,044.63, which earnings were found to be community property and were mixed and co-mingled with appellant's separate property, except for the sum of $6,711.37, by placing it all together during their marriage in various bank accounts, in a safety deposit box and by investing it in the various business enterprizes herein mentioned and by withdrawing therefrom and adding thereto large sums at various times without keeping any kind of a record separating the funds much of the time; that because of the mixing and co-mingling of the community property of the parties, during the marriage, with appellant's separate property owned by her before her marriage, her separate property has lost its identity and cannot be traced or identified, except for the $6,711.37 previously herein shown, either by herself or by a certified public accountant who had been employed by appellant for a number of years and was familiar with her accounts and her business operations and who testified for her at the trial; and that the parties by their acts and conduct really treated the purchases of their various properties as community property without specifying that any certain item was the separate property of either spouse. The trial court found further that there was no competent evidence or testimony to support appellant's claims that appellee had given to her the earnings during their marriage or that such were given to her by reason of appellee's acts, consent, acquiescence or conduct, or by reason of estoppel. The court further found that appellant was about 25 years older than appellee and was in failing health and because of these and other disparaties shown she was entitled to more than half of the community property owned by the parties (the record reveals that the appellant was about 65 and appellee was about 40 years of age at the time of the trial).

On a certified question in the case of Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21, 23, in discussing the power vested by statute in the trial court, Judge Greenwood, speaking for the Supreme Court, said:

"The court pronouncing a decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate or community, and * * * its action, in the exercise of such discretion, should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair."

The Hedtke case was followed by Clark v. Clark, Tex.Civ.App., 35 S.W.2d 189, writ dismissed; Housewright v. Housewright, Tex.Civ.App., 41 S.W.2d 1071, writ refused; Scannell v. Scannell, Tex.Civ.App., 117 S.W.2d 538; Hamm v. Hamm, Tex.Civ.App., 159 S.W.2d 183; Hendrick v. Hendrick, Tex.Civ.App., 222 S.W.2d 281, and numerous other cases.

■ In a divorce action, the trial court shall decree and order a division of the estate of the parties in such a way as it may deem just and right, having due regard for the rights of the parties. Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002. In doing so, the trial court may take into consideration the difference in ages of the parties or any other disparity between the earning powers of the parties, the business opportunities, capacities and abilities and is not required to divide the property equally. Venezia v. Venezia, Tex.Civ.App., 227 S.W.2d 881 and the many other authorities there cited.

■ It is presumed that all of the property which the husband and wife possess at the dissolution of marriage is community property and the burden to show otherwise

is upon the party who alleges to the contrary. Earnest v. Earnest, Tex.Civ.App., 223 S.W.2d 681. Such a rule applies to realty acquired during marriage as well as to personal property. Rippy v. Rippy, Tex. Civ.App., 49 S.W.2d 494. The presumption of the community character of the property acquired by either spouse during marriage is very strong, and can be overcome only by clear and convincing proof that it belongs to one or the other of them, and the burden of proving its separate character is always upon him. who asserts it. Skinner v. Skinner, Tex.Civ.App., 202 S.W.2d 318; Harkness v. McQueen, Tex.Civ.App., 232 S.W.2d 629. The fact that at the time of the marriage one spouse had much property and the other had nothing and that during the marriage relation the parties decreased in fortune, will not rebut the presumptions herein mentioned, unless the purchase money or consideration for the property is explicitly traced to the separate property of the spouse having the original ownership of the "much property" previously mentioned. Rippy v. Rippy, supra.

■ With reference to the co-mingling of funds by the husband and wife while married to each other:

"The law in Texas is to the effect that where separate and community property are so intermixed that the separate property loses its identity and cannot accurately be traced, the co-mingled fund, and property acquired therewith, becomes community property. Stated in another way, where a husband or wife permits his or her separate property to become so co-mingled with community property that it cannot be identified, the separate property co-mingled becomes community property.' See Tex.Jur., 10 Yr.Supp. Vol. 5, Sec. 67a, p. 595; Hudspeth v. Hudspeth, Tex.Civ.App., 198 S.W.2d 768; Coggin v. Coggin, Tex.Civ.App., 204 S.W.2d 47; Gorman v. Gorman, Tex.Civ.App., 180 S.W.2d 470; Moore v. Moore, Tex. Civ.App., 192 S.W.2d 929; Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494; McGarraugh v. McGarraugh, Tex.Civ. App., 177 S.W.2d 296; Walker-Smith Co. v. Coker, Tex.Civ.App., 176 S.W.2d 1002." Odle v. Odle, Tex.Civ.App., 272 S.W.2d 381, 383.

The record before us reveals that at the time of her marriage to appellee appellant owned certain properties consisting in part of interests in loan companies identified as Southern Brokerage Company, Local Finance Company, Plains Finance Company and Texas Management Company, and had a bank account and maintained a safety deposit box at her bank. After her marriage to appellee, appellant and her employees continued to manage her property and she kept her bank account and maintained her safety deposit box, during which time the earnings or proceeds from her properties amounted to $84,044.66. The record also reveals that during appellant's marriage to appellee the status of the property changed to that previously herein listed, during which time she drew monies from one or more of the said loan companies and placed them in either the safety deposit box, her bank account or in other companies or investments and did thereafter take money out of the safety deposit box or her checking account in the bank or one or more of the business enterprises and interchange the said funds between the said businesses, bank account and safety deposit box, thus mixing all of the said monies together with the earnings and profits in the sum of $84,044.66 realized during marriage.

■ Under the rules of law cited, appellant was charged with the burden of tracing and proving her separate funds before such could be awarded to her. This she failed to do, except for the $6,711.37 awarded to her as her separate property. On the contrary, she testified in effect that she could not trace the various monies from the safety deposit box, the bank account or business investments being often transferred from one to the other. She also testified that she had some of the property

before marriage and acquired some of it while she was married to appellee, but she claimed ownership of all of it "because I made every dime of it myself." She seemed to think the property was all hers regardless of the law governing the co-mingling of separate funds with community property. The testimony reveals that no record was kept of money transferred from the safety deposit box or from one account or business to another except for notations made on two envelopes from May 20, 1948, to June 7, 1951, and none was kept thereafter. The notations kept on the envelopes constituted a crude sort of method that could be explained or partially explained only by appellant. The record reveals that monies in various amounts were placed and withdrawn from the safety deposit box at various times during the marriage. At one time there was approximately $64,000 in the safety deposit box and large amounts were placed in and withdrawn therefrom at various times. There was cash in the sum of $37,500 in the said box at the time of the trial.

Appellant's accountant, Elmer M. Likes, testified that he did not audit the funds kept in the safety deposit box but he had to take the statement of someone else of the various amounts kept therein. He further testified that the safety deposit box was used as a "grab-all" sort of a place to put money in and take it out at various times. The witness, Likes, further testified that he was a certified public accountant and had been working for appellant at various times since September, 1947; that he had recently checked and audited her business affairs but upon cross examination concerning the property previously herein listed he could not trace the source of the money on hand and was unable to testify that any of the property listed was purchased by money that appellant had before her marriage to appellee. He several times testified concerning these various items; when asked where the money came from that purchased them, he answered to the effect that he did not know. No other witness made an attempt to trace the separate funds of appellant, except for the $6,711.37 previously herein mentioned, and there was no evidence of any nature tracing such funds or identifying them.

Appellant charges that the evidence was insufficient to support the trial court's findings. To test the sufficiency of the evidence to determine if it will support the trial court's findings we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence and circumstances to the contrary. It is likewise the rule that the findings of the trial judge where there is no jury will not be disturbed by an appellate court where there is some evidence of probative force to support the findings, even though the evidence may be conflicting and the Court of Civil Appeals might have reached a different conclusion. It is a well settled rule that the trial court's findings of fact will be upheld unless they are manifestly erroneous and they will be overruled only when they are without any evidence of probative force to support them or where they are so against the great weight and preponderance of the evidence as to be manifestly wrong. Boston Ins. Co. v. Rainwater, Tex.Civ.App., 197 S.W.2d 118 and other authorities there cited; Kelly v. Applewhite, Tex.Civ.App., 231 S.W.2d 974; Banks v. Collins, 152 Tex. 265, 257 S.W. 2d 97.

We find no proof, or at any rate none of probative force, showing or tending to show that appellee gave to appellant the property earnings here involved during their marriage either directly or by his acts, conduct or acquiescence, or that any loans were made to appellee by appellant. Neither do we find where the trial court forfeited appellant's rights to her separate property either by judgment, conclusion or a finding of fact. The trial court merely found and concluded that appellant co-mingled her separate property with community property and failed to discharge the burden of proof in tracing and keeping separate any prop-

erty she may have had when she was married to appellee, except for the $6,711.37.

Applying the rules of law to the facts presented here, it is our opinion that there is sufficient evidence to support the material findings made by the trial court. It is our opinion further that appellee's cross assignments of error should all be overruled.

The appellate courts of this State will presume, upon the appeal of any case, that the judgment appealed from is correct unless the contrary is made to appear affirmatively from a proper record of the proceedings had in the trial below. Smothers v. Gawlik, Tex.Civ.App., 214 S.W. 2d 894; 3 Tex.Jur. 424, Secs. 302 and 303; Bennett v. Jackson, Tex.Civ.App., 172 S.W. 2d 395; Erback v. Donald, Tex.Civ.App., 170 S.W.2d 289. In attempting to show affirmatively that an error exists as reflected by the record, appellant must be guided by the rules of law and of equity applicable to the record produced. In our opinion appellant has failed to show any reversible error committed by the trial court.

The statement of facts is unduly voluminous, containing many argumentative statements made by counsel and other statements made by the trial court, making some portions of the record confusing. However, applying the rules of law herein cited to a careful examination of the record, we believe the trial court did not abuse its discretion and its judgment should be affirmed. Appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.

MARTIN, Justice (dissenting).

The writer of this dissent originally drew this cause on appeal. The opinion prepared for the court was rejected by Chief Justice E. L. PITTS, who wrote the majority opinion herein which was later approved by Associate Justice E. O. Northcutt. The opinion as originally written by the undersigned, with some additions thereto, now becomes a dissenting opinion:

An incorrect statement of the record as found in the majority opinion should be first corrected. The majority opinion states:

"The trial court found that during the marriage *their properties had earned $84,044.63,* which earnings were found to be community property * * *."

The trial court's findings of fact reveal the following:

"6. That the plaintiff, prior to her marriage to the defendant, operated and managed said finance companies, either as sole owner or as a partner and that following the marriage to defendant there was no change in her manner of the operation of said finance companies. 9. That during the marriage of the parties, a profit of approximately $84,044.63 *was made from the aforesaid finance companies."* (Emphasis added.)

The cause here in issue is one where the sole contention of even the appellee himself is that appellant's earnings became community property and were so mingled with her separate capital that she must forfeit one-half of her remaining capital after all community earnings had been expended.

The majority opinion has so wholly submerged the basic facts in this litigation as to gloss over the fact that the judgment in the cause is one to shock the conscience of any court. Further, the basic principle in the cause has not been directly ruled upon by any court in the state of Texas. The appellant, a former career army sergeant without funds or employment, married appellee, a former school teacher who had built up an excellent business and income in the field of financing. The record reveals that appellant owned four finance companies prior to the time she married the appellee. The marriage was in existence from August 17, 1949, until the third day of November 1955. At the time of the granting of the divorce, appellant was 65 years of age, in

ill health and unable to work, while appellee was a robust man 40 years of age.

The appellant produced a Certified Public Accountant as a witness and this accountant gave a complete audit of all appellant's business and affairs. The correctness of this audit and the fact that the trial court approved the entire audit by his findings of fact is established under well-recognized accounting principles. In his finding of fact number 9, the trial court accepted and found as a fact from the audit that during the marriage of the parties a profit of approximately $84,044.63 was made from appellant's finance companies. In his finding of fact number 10, the trial court likewise accepted from the audit the fact that during the marriage over $123,000 of capital was added to the aforesaid finance companies and over $248,000 was withdrawn from said finance companies. It is an established accounting fact and mathematical principle that if the sum of $84,044.63 was a correct statement of the profit from the finance companies as shown by the audit of the Certified Public Accountant, and as so found by the trial court, then every other item in the audit must have been necessarily accepted by the trial court. It is elementary that the profits shown by an audit are based on all the underlying items of the audit, such as expenses and other like items and that the rejection of any item of the audit would effect a change in the profit as shown and throw the audit out of balance.

The above audit was the only one produced in the trial of the cause and it reveals without dispute that the appellee in a period of about six years not only dissipated all the profits realized by appellant from her finance operations in the amount of $84,044.63 but further dissipated $41,911.13 of the original capital appellant had invested in such companies. On this record of achievement, the Court of Domestic Relations awarded to appellee the Cowboy Cafe as purchased with appellant's funds and of a value in excess of $9,000, the equity in a 1955 station wagon and also gave appellee

the sum of $19,985.93 in cash—a total of $29,881.89 being awarded to the appellee sergeant.

The sole issue in the cause, as viewed in this dissent, is whether a complete and uncontroverted audit by a Certified Public Accountant of a cash estate and its earnings in cash is a sufficient segregation of the community cash earning from the separate funds and cash as owned by the appellant and used in the production of income. Not a single Texas case has been cited, or can be found, where the courts have held that a married woman must forfeit one-half of her separate estate under the theory of co-mingling of community and separate funds where such married woman has produced a complete audit revealing every transaction with reference to her funds and financial affairs during the entire period of the marriage. This dissent is based upon the proposition that where a complete audit by a Certified Public Accountant is produced revealing all transactions involving a married woman's estate consisting of cash funds and where the trial court itself has accepted from said audit the community profits earned by the married woman's finance companies and funds that this is a sufficient segregation of the married woman's separate funds from her community earnings and that a forfeiture of her separate estate and funds to appellee by the trial court was a gross abuse of discretion in this cause. This is particularly true where such audit reveals not only that all the community profits earned by a wife's separate funds have been dissipated during the marriage but also that an additional amount of the wife's capital in the sum of $41,911.13 had likewise been dissipated.

There has been a half-hearted attempt in the cause to say that the audit does not reveal all the transactions or is not a complete audit and that the trial court was unable to trace the funds in his findings. Any such finding has no basis in the evidence or audit. The trial court revealed that he did not have sufficient knowledge

or training to refute the audit as given by the Certified Public Accountant:

"The Court: Well, go ahead. I don't know about bookkeeping. Go ahead and explain it."

The trial court also reproved appellant's attorney as to examination of the auditor and thereby revealed the further fact that the court relied entirely upon the auditor and the testimony of the auditor.

"The Court: This is what this man is here for. He is an expert. He is here explaining—no body except an accountant could figure out—I will overrule the objection."

The above statement is a direct approval of the testimony of the auditor and of his audit and was made by the court during the trial and is found in the statement of facts. The trial court in his findings of fact also approved the major items comprising the totals as established by the audit. Added to the trial court's repeated recognition of the correctness of the detailed audit is the admission of appellee's attorney found in the statement of facts which admission also wholly concedes the completeness of the audit:

"Q. (By Mr. Humphrey) Now Mr. Likes, you have made a complete and exhaustive audit of these four companies and the Mary Montgomery bank account, haven't you? A. Yes:

"Q. And *you* answer that you are not able to tell us is simply because the funds have been deposited and redeposited and withdrawn and expended in such a manner that it is impossible for either you or anyone else to determine that fact? A. We are talking about the same dollars.

"Q. Yes, how much was spent of money that she had on hand before she married and how much was spent out of earnings during marriage or any of these various items contained in the audit it is impossible to tell. A. The exact dollars cannot be identified."

It is apparent again and again in the record that the auditor, while stating he was unable to identify the exact money or funds, completely traced and segregated each and every item both of separate funds and community earnings through his audit. It likewise is apparent from a sound examination of the record that the auditor, in answering the questions propounded by appellee's counsel and by the court as to identifying specific funds, trusted to the insight of the courts to draw the distinction clearly found in his testimony—that the monetary interest and items could be, and were, clearly traced by the audit without the necessity of identifying the specific original funds.

The theory of the appellee as approved by the trial court and as affirmed in the majority opinion will now be detailed together with such facts as are necessary to an understanding thereof.

Appellant, prior to her marriage to appellee, owned finance companies and cash assets of the admitted value of $85,954.29. An examination of the Certified Public Accountant's audit of appellant's finance companies as to the period of time she was married to appellee reveals the following major items. During such marriage, a period of approximately six years, the finance companies owned by appellant realized profits in the amount of $84,044.63. Capital additions were made in the amount of $123,017.73. The total sum of $248,974.29 was withdrawn from such companies during the marriage. These figures were accepted as correct by the trial court and appear in his findings of fact. Such findings alone reveal that the withdrawals during the marriage exceeded all additions of capital as well as all profits.

Appellant introduced in evidence the complete audit of her finance companies revealing the above stated items and also covering her income and expenditures dur-

ing the entire period of the marriage. Such audit reveals that she and her spouse dissipated all the profits of her finance companies in the amount of $84,044.63 and also expended $41,911.13 of the capital appellant had invested in such companies at the time of her marriage. The undisputed evidence further reveals that while appellee was dissipating appellant's capital and earnings he contributed nothing to the financial status of the family or to its upkeep. Appellee did permit appellant to take credit on her income tax payment for a loss incurred by him in one of his business ventures. Having contributed nothing financially to the marriage, it is appellee's sole contention that appellant so mingled the profits of her finance companies with her original capital investment in the companies that the original dollars or money owned by appellant prior to her marriage could not be identified and he was therefore entitled, under the theory of co-mingling of community and separate property, to one-half of all appellant's remaining capital and funds as held by her at the termination of their marriage.

The trial court accepted appellee's theory of co-mingling of funds in the face of the undisputed audit in the record which revealed in detail the conduct of appellant's finance companies together with all financial transactions, receipts and disbursements by appellant in relation to her business and income. Wholly on this theory of co-mingling, the trial court awarded to appellee the Cowboy Cafe purchased with appellant's funds and of a value in excess of nine thousand dollars, the equity in a 1955 Chevrolet station wagon and also gave appellee the sum of $19,895.03 in cash, a total of $29,881.89 being awarded to the appellee. The appellant was left with the home acquired by her funds and with one finance company of the approximate value of ten thousand dollars and other non-revenue bearing property. Although appellant had sold three of her original finance companies and retained one of such companies of the approximate value of ten thousand dollars, the sale price of the three companies and the value of the company still owned by appellant were lumped off by the trial court as community property and divided along with all other properties —⅔ to appellant and ⅓ to appellee under the court's summary of values. This unequal division was decreed by the trial court as "just and right" upon the evidence that appellant was 65 years of age, in ill health and unable to work while appellee was a robust, ex-army career sergeant of the age of 40 years. However, appellee obtained the only appreciable income producing business listed in the assets as well as a large amount of the cash funds of the appellant.

Appellee's theory of co-mingling as accepted by the trial court should be examined in the light of the record. Such theory as followed by the trial court in forfeiting to appellee the above property and cash is best illustrated by an inquiry of appellee's counsel as follows:

"Mr. Humphrey: He can answer it 'yes' or 'no'; *is it money that they had before they were married* or is it money that has come through here * * *". (Italics added.)

Such theory is further high-lighted by the following exchange between opposing attorneys in the cause. Following the above quoted statement by appellee's counsel, appellant's counsel stated:

"The reason I say that is he is asking the accountant to say that is the same dollar that was in the original bank account that is the same dollar today without asking the accountant whether or not he can trace the monetary interest of the community. * * *".

Answering this proposition, counsel for appellee stated:

"We are not interested in the monetary interest."

The trial court recognized that the cash withdrawals from the finance companies which were continued until all profits were

exhausted constituted community profits and not capital. This principle as recognized and accepted by the trial court is one of the basic elements of appellant's case. The following quotation from the record reveals the fact that the trial court recognized this basic principle:

"A. (Witness, the Certified Public Accountant) I would not say that it is an assumption. It is an accounting theory. In other words, you will have to go back which comes first, the chicken or the egg?

"The Court: I had the impression that when people drew money out of companies like that, they first take out their profits rather than their capital. A. That is what I am saying now.

"The Court: I thought you were saying just exactly the reverse of it."

Only this one auditor appeared as a witness and the trial court recognized the conclusiveness of his testimony. But, the trial court either did not follow through the testimony of the auditor or failed to recognize the clear import of his testimony and the conclusiveness of the audit. The auditor clearly separated the appellant's separate capital from her earnings as community as revealed by his undisputed testimony:

"Q. When you have finished your account there that you have set up, you have shown to the court what the monetary interest she had in capital today. A. So far as to loan companies are concerned.

"Q. That's right; well, that is all she has. A. That's right.

"Q. You can also segregate the amount of income that was made which would be community property. A. As shown by the audit—

"Q. Well, you have done it haven't you? A. Yes."

The auditor, under interrogation by the court went through each year's earnings and withdrawals revealing not only the expenditure of all the profits of appellant's finance companies but also a large segment of her capital. The divergence between appellant's theory and proof concerning the funds and the appellee's theory is best illustrated by the following question propounded by appellee's counsel and by the auditor's reply thereto:

"Q. Yes, how much was separate of the *money that she had on hand before she married* and how much was out of earnings during marriage on any of these various items contained in the audit, it is impossible to tell? A. *The exact dollars cannot be identified.*" (Italics added.)

The nature of the trial court's and the appellee's haranguing of the auditor is revealed by the auditor's testimony:

"A. I have answered that ten times for you.

"Q. All right. A. And I'll answer it ten more if it will help.

\* \* \* \* \* \*

"A. What are you after—a final result or a piece-meal result?"

The Certified Public Accountant in his testimony repeatedly pointed out to the appellee's counsel and to the trial court that the specific dollars or money could not be identified as the same dollars or money as originally owned by appellant at the time of her marriage. He testified many times: "I can't identify the dollars." But the auditor's complete audit and breakdown of appellant's capital and earnings and expenditures revealed, without such fact being controverted, that during the few years of appellant's marriage to appellee all the profits earned by appellant's capital as well as a considerable amount of the original capital owned by her at the time of her marriage to appellee had been dissipated. The audit further revealed, without such fact being controverted, that such expenditures left remaining to appellant only a

greatly diminished amount of appellant's original capital—her separate property.

The earnings of appellant's finance companies and expenditure of the total earnings of such companies were not only shown by the detailed audit of the accountant but were also revealed by appellee's own testimony with reference to his having shown appellant a type of extravagant living to which he had never been accustomed. He was a self-acclaimed sport and his testimony reveals a continued outlay of expenditures of appellant's earnings on trips to Havana, Cuba, the Kentucky Derby, the Mardi Gras, Indianapolis Speedway, the World Series and a multitude of other sporting events to which appellee was addicted. Under the testimony of appellee, he clearly revealed to appellant a type of "high living" to which she had not been accustomed but all such outlays of expense were paid for by the earnings of appellant's finance companies and finally by expenditures of her original capital. The evidence is undisputed that after all community earnings and profits of appellant's finance companies were wholly expended and dissipated during the marriage, the appellee then sought to recover a portion of appellant's depleted separate capital. Under the record appellee's love apparently waned in like proportion to his dissipation of appellant's earnings and a large portion of her original capital.

It is the contention of appellee that this cause is clearly governed by Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494. The issue here is clearly distinguishable. On page 496 of the cited cause is shown a summary of the issue of property:

"In the instant case there is no dispute that *all the property in question was acquired during the marriage,* and that at the time the marriage was dissolved by the death of T. E. Rippy all the property was in his or their possession. *The only proof offered by* appellants *tending to show that the property was not community,* but the separate estate of T. E. Rippy, *was*

*that he had a separate estate when he married appellee and that she had no property;* that Rippy's estate was sold, and from 1 to 4 years thereafter the real estate in suit was purchased and the conveyances taken in his name." (Italics added.)

In the cause in issue it is undisputed that the time of the marriage appellant owned cash assets in excess of $85,954.29. Out of her personal account she contributed to such capital assets the further sum of at least $99,762.46 as revealed by the undisputed evidence. All additions to and expenditures of appellant's capital and all earnings of such capital and expenditures thereof were shown in detail by a complete audit prepared by the Certified Public Accountant whose audit and testimony detailed each and every transaction. Such detailed audit revealed, without such fact being controverted, that appellee and appellant during the marriage not only expended profits earned by appellant's business in the amount of $84,044.63 but also expended an additional $41,911.13 in excess of such profits and indisputably taken from appellant's capital.

"The changes and mutations which separate property may undergo by virtue of natural growth and development, or by exchange, can in nowise affect its status. * * * Otherwise it would result in the denying to the wife the right to alienate her property for cash or other property, save at the cost of losing it. She could not market her farm products, nor sell her surplus lands, no matter what the emergency; *neither could she lend her money without transferring the principal as well as the interest to the community.* No exchange, however desirable, could be made. Such an absurd state of things is not in consonance with the right to own property." Law of Marital Rights in Texas, Speer, Third Edition, Sec. 426, Page 512. (Italics added.)

No case cited in this appeal requires a married woman to identify the exact dollars

or money owned by her at the time of her marriage at the risk of forfeiture of the same to the community if not so identified. Nor is it a sound proposition of law that a married woman by exercising her right to manage and control her separate property as authorized by statute thereby forfeits her entire estate to the community contrary to the facts detailed by a complete audit revealing her original capital and likewise the community earnings and disposition thereof. Although the exact dollars or money as originally owned by appellant prior to her marriage to appellee were not identified as being the same dollars or money as held by her after marriage such a showing does not reveal a co-mingling of community and separate funds authorizing a forfeiture of appellant's separate estate and capital under the theory of co-mingling of estates. Art. 4614, Vernon's Texas Civil Statutes; First National Bank of Brownwood v. Hickman, Tex.Civ.App., 89 S.W.2d 838 (writ refused); Schmidt v. Huppman, 73 Tex. 112, 11 S.W. 175; Love v. Robertson, 7 Tex. 6; Rose v. Houston, 11 Tex. 324; R. B. Spencer & Co. v. Green, Tex.Civ.App., 203 S.W.2d 957, Syl. 6; Aultman, Miller & Co. v. George, 12 Tex.Civ.App. 457, 34 S.W. 652; Hartman v. Hartman, Tex.Civ.App., 253 S.W.2d 480; Farrow v. Farrow, Tex.Civ.App., 238 S.W.2d 255.

After appellee had expended all the profits of appellant's finance companies and a large amount of her capital, the fund remaining was appellant's separate capital investment. Such fund being appellant's separate property, any property purchased therewith or in which said fund was invested became her separate property. Accordingly, appellant's points One, Three, Four, Five, Seven, Eight and Ten should be sustained. The judgment of the trial court should be reversed and judgment here rendered that appellant recover title and possession of all the property and funds in controversy as described in the judgment of the trial court other than the equity in the 1955 Chevrolet Station Wagon in possession of the appellee for which equity appellee had traded his old station wagon, which equity in and title to said Station Wagon should be vested in appellee as his separate property.

Appellee's cross-assignments should be overruled. In passing on this phase of the case it must be observed that appellee's complaint that appellant's separate estate should be charged with $4,500 advanced by the community to pay appellant's income tax further highlights the gross injustice of appellee's position and claims. Appellee, after receiving judgment for $29,881.89, was still unhappy that appellant might have paid her income tax out of her own individual earnings—which earnings had been squandered by appellee during his marriage to appellant.

The trial court accepted the audit total of $84,044.63 as the correct amount of all community earnings of appellant. Such audit likewise revealed that all such earnings had been dissipated during the marriage as well as an additional amount of $41,911.93 from appellant's capital. Nothing was due the appellee. This sordid record should not encourage the courts to resort to a supertechnical and perverted interpretation of the law in order to award the appellee the further sum of $29,881.89 out of appellant's depleted capital investment.

The opinion hereinabove reveals an abuse of discretion on the part of the trial court. A further abuse of discretion is clearly revealed by the statement of facts. The spectacle of the trial court seeking to either bargain or bluff the appellant out of an appeal from his intended judgment by juggling the unfortunate woman's funds as a medium of exchange presents not only an abuse of discretion but conduct which should shock the conscience of any court. The court's method of arriving at a decision as to dividing the appellant's funds is revealed by the statement of facts:

"The Court: If I give him less than half of this and it would be appealed

you take a chance of losing a good deal more money."

The avarice with which appellee has pressed his asserted claim against this unfortunate woman and the avid adoption of appellee's cause and asserted legal principle by the courts paints a picture of justice under the judicial processes which is not likely to add stature or luster to either the bar or bench.